161 So.2d 597 (1964)
T. L. JAMES & CO., Inc.
v.
JEFFERSON PARISH COUNCIL and Donald G. Lambert.
No. 1447.
Court of Appeal of Louisiana, Fourth Circuit.
March 9, 1964.
Francis G. Weller, of Deutsch, Kerrigan & Stiles, New Orleans, for plaintiff-appellant.
*598 Patrick E. Carr, of McDonald, Buchler & Carr, Matairie, for Jefferson Parish Council, defendant-appellee.
Joseph K. Clay, for Donald G. Lambert, defendant-appellee.
Before McBRIDE, REGAN, YARRUT, SAMUEL and CHASEZ, JJ.
YARRUT, Judge.
Plaintiff is the unsuccessful bidder, and Defendants are, respectively, the Jefferson Parish Council, the governing authority which advertised for the bids, and Donald G. Lambert, the bidder to whom the contract was awarded. J. B. Clements, as a taxpayer, while omitted from the title of the suit, does appear as co-Plaintiff. T. L. James & Co., Inc. will be referred to herein as "James." The Jefferson Parish Council as the "Council;" and Donald G. Lambert, as "Lambert."
From a judgment rejecting the demands of Plaintiffs, the latter have taken this suspensive appeal.
Plaintiffs seek an injunction to restrain the Council from awarding Lambert a public contract, involving over two million dollars, for the construction of certain public works, including street paving, drainage and sanitary sewerage in a residential section of Jefferson Parish, called "Pontchartrain Shores." The call for bids was advertised under LSA-Revised Statutes, entitled "Public Contracts, Works and Improvements," §§ 38:2211-38:2212, which require contracts for public works to be awarded to the "lowest responsible bidder who has bid according to the contract, plans and specifications as advertised," reserving to the governing authority the right to reject any and all bids. James, though conceding Lambert's responsibility and competency, contends it should be awarded the contract as the lowest bidder, or the Council be ordered to reject all bids.
After receipt of the bids, the Council referred them to the engineer and the Parish Administrative Department for recommendation as to acceptance. The Administrative Department recommended that the bid of James be accepted and, on August 9, 1963, the Council passed a resolution awarding the contract to James. Immediately upon the passage of this resolution, Lambert protested that he was the lowest responsible bidder, whereupon the Council rescinded the award to James and took it under advisement for further study.
The Council then requested an opinion from the attorneys handling the issuance and sale of the assessment certificates, who advised that the Council could do one of two things, (1) award the contract to the lowest responsible bidder, or (2) reject all bids. The Council then received a further recommendation from the Parish President, the Chief Administrative Officer of the Parish, recommending that all bids be rejected, and the project be readvertised. On September 12, 1963, at a regular meeting, the Council passed a resolution awarding the contract to Lambert as the lowest responsible bidder.
The Parish was committed to contribute to the project from funds other than those to be assessed against the property abutting major streets and boulevards. By virtue of this commitment, the Parish would have to contribute $40,725.00 under the Lambert bid, and $24,410.00 under the James bid. There was no notice in the plans and specifications or contract of this commitment, nor that such commitment would be considered in determining the lowest responsible bidder.
The pertinent provisions of the proposed contract are:

"1.10 AWARD AND EXECUTION OF CONTRACT

"The contract will be awarded to the lowest responsible bidder complying with the condition of the invitation for bids, provided his bid is reasonable and it is *599 to the interest of the Owner to accept it. * * *"
"1.11 TIME OF COMPLETION
"The work covered by the plans, specifications and contract documents must be completed sufficient for acceptance within the agreed number of calendar days starting from the date of execution of the formal contract.
"As time of completion will be a consideration of value to the Owner, should the contractor fail to complete the work specified, both parties to the contract mutually agree that the contractor shall pay the Owner, as acknowledged liquidated damages the sum equal to 1/40th of 1% of the contract price but not less than $25.00, Twenty-Five and 00/100 Dollars for each and every day that he is delinquent, which amounts shall be reported by the Engineer, who will deduct same from the balance due the contractor."
James bid $2,072,547.61, and 365 days for completion, while Lambert bid $2,063,199.59, and 500 days for completion.
Plaintiffs contend that, as James agreed to complete the job in 365 days, or 135 days less than Lambert, the James bid was $60,581.98 lower as follows:

 JAMES LAMBERT
Bid $2,072,547.61 $2,063,199.59
Less total penalty
of $518.00
per day for 135
days 69,930.00
 _________
Contract price
for 500 days $2,002,617.61 $2,063,199.59

Although the contract did not specifically fix a monetary value of each working day, Plaintiffs contend the fixing of the daily demurrage should be considered in construing what the Council intended to imply when it declared that "time of completion will be a consideration of value * * *."
We cannot agree with this contention. The demurrage provision is the usual method of fixing the liquidated damages the contractor must pay for each day's delay in completing the contract to warn the contractor against procrastination and delay. Before the Council could benefit by this 135-day difference, if James were awarded the contract, James would have to be in default. Certainly James would do everything possible to avoid paying $518.00 daily demurrage, and the Council could recover only from a default, rather than a performance, of the contract. The Council evidently concluded it was more advantageous to save $9,348.02 under the Lambert bid, than the far remote possibility of recovering highly improbable liquidated damages from James under its shorter time bid.
Regarding the additional cost to the Parish, the engineer for the Council admitted he did not consider or include any such commitment when he prepared the plans, specifications and contract. It was only after the bids were in, and only upon complaint of James and Clements.
The extra cost for which the Parish was committed arose from the difference between the 6-inch concrete required for ordinary thoroughfares, and the 8-inch concrete required for boulevards and major streets, including 15% for engineering, legal and other contingent costs, concerning which the James bid was lower than Lambert's.
The law governing the acceptance of bids for public works, where the statute requires the award be made to the "lowest bidder," is clearly stated in 43 American Jurisprudence, § 44, p. 786, verbo "Public Works and Contracts," to the effect that, when the controlling statute or ordinance requires, without qualification the letting of a pubic contract to the lowest bidder, the duty of awarding the contract *600 is generally held to be ministerial and not judicial, and the contract must be awarded to the bidder whose bid is actually the lowest in amount. Usually, however, the contract is not required to be awarded to the lowest bidder, without qualification, but to the "lowest responsible bidder," or "lowest and best bidder." There is but little dissent from the general rule that, in determining who is such "lowest responsible bidder," or "lowest and best bidder," public boards and officials are vested with wide discretion. Their decision, when based upon an honest exercise of the discretion thus vested in them, will not be interfered with by the courts, unless apparently arbitrary or capricious.
Since LSA-Revised Statutes, §§ 38:2211-38:2212, require the governing authority to award the contract to the "lowest responsible bidder who has bid according to the contract, plans and specifications as advertised," with the right of the authority to reject any and all bids, the statute creates a presumption that the Lambert bid is the lowest. The Council while it had the right to reject any and all bids, should not be held to have arbitrarily exercised its authority in awarding the contract to Lambert, that would warrant this court setting the award aside, on the theory that the $9,348.02 saving to the Council in the bid of Lambert is offset by the 135-day lesser time of completion of the James bid; or for the additional cost to the taxpayers resulting from the commitment of the Parish, which would be incurred under the Lambert bid, when no notice of such commitment was included in the plans, specifications or contract upon which the bidders had the opportunity to competitively bid. Housing Authority of Opelousas, La. v. Pittman Const. Co., 264 F.2d 695 (C.A.5, 1959); W. R. Aldrich & Co. v. Gravity Drainage District No. 1, 238 La. 190, 114 So.2d 860; Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627; St. Landry Lumber Co. v. Mayor and Board of Aldermen, 155 La. 892, 99 So. 687; Pascoe v. Barhum, 247 Mich. 343, 225 N.W. 506, 65 A.L.R. 833.
For the reasons assigned, we can find no abuse in the action of the Council in awarding the contract to Lambert as the "lowest responsible bidder," hence the judgment of the District Court for Defendants is affirmed; Plaintiffs to pay all costs in both courts.
Affirmed.