LOTTINGER, Judge.
This is an appeal by Haughton Elevator Division, Reliance Electric Company (Haughton) from the dissolving of a temporary restraining order and the denial of a preliminary injunction against the State of Louisiana, through Division of Administration, in order to halt the award of elevator maintenance and repair contracts.
The facts are undisputed that Haughton was the lowest bidder on numerous contracts; however, Haughton was disqualified and denied the award of any contract. The Division of Administration concluded that Haughton was not the lowest “responsible” bidder based on its past performance of an elevator maintenance contract which Haughton had with the State at Charity Hospital in New Orleans.
During the Charity contract covering approximately 40 elevators, an inspection was conducted in September of 1976 by Mr. Fournet, a consulting engineer to the Department of Health and Human Resources who was inspecting all elevators maintained by the State. Haughton was informed of the inspection, was given an opportunity to participate, and was given the chance to rebut the contents of an unfavorable report resulting from the inspection. A follow-up inspection was made prior to the opening of the bids. Based on these reports and Haughton’s rebuttal, the Division of Administration decided that Haughton was not a responsible bidder and thus disqualified. LSA-R.S. 38:2211.
Haughton argues that the trial judge erred in (1) failing to require the State to give Haughton a fair chance to disprove the charge of irresponsibility and (2) finding the State had sufficient evidence for declaring Haughton not to be a responsible bidder.
ERROR NO. 1 .
Haughton argues that the lowest bidder should be given notice and a fair chance to disprove charges of irresponsibility, citing Housing Authority of Opelousas, La. v. Pittman Construction Co., 264 F.2d 695 (5th Cir. 1959).
The initial question therefore is whether the lowest bidder must be given notice and a fair chance to rebut charges against it?
As a general rule, courts will not substitute their judgment for that of an administrative agency or awarding authority unless the agency or authority has acted arbitrarily and capriciously. Tide Equipment Co. v. Pointe Coupee Par. Police Jury, 312 So.2d 154 (La.App. 1st Cir. 1975), writ denied 315 So.2d 38 (1975); T. L. James & Co., Inc. v. Jefferson Parish Council, 161 So.2d 597 (La.App. 4th Cir. 1964).
In Housing Authority of Opelousas, La. v. Pittman Construction Co., supra, the Fifth Circuit in part said:
“This case can be sliced down to the Board’s deciding that the low bidder was not a responsible bidder — without giving the low bidder a fair chance to disprove the charges of irresponsibility.
* * * * * *
“We do not expect such, a Board to conduct FBI investigations, hold elaborate hearings, adhere to legal rules of evidence, and function as a judicial body. Members of public boards, however, have as well developed bumps of fairness and reasonableness as judges. In the light of what fair-minded, reasonable laymen *695 would do, we think that before a Board disqualifies the lowest bidder as not responsible, the lowest bidder has the right to be heard and the Board has the duty to listen on the subject of responsibility.”
We agree with this language. The refusal or failure of the administrative agency or awarding authority to give adequate notice, including the content of damaging information and the chance to rebut unfavorable charges prior to the disqualification of the lowest bidder and awarding of the contract is arbitrary and capricious sufficient to cause a court to enjoin the awarding of the contract. See St. Landry Lumber Co. v. Mayor and Board of Alderman, 155 La. 892, 99 So. 687 (1924), wherein the Supreme Court implied that in order for an agency to fairly disqualify the lowest bidder, the bidder should be given the opportunity to respond to the charges. This court cannot hand down any hard and fast rule as to the amount of time that must elapse between notice and the opportunity to refute the charges. The time afforded must be sufficient to allow for preparation of rebuttal, and yet not bring to a halt the operations of government. Each situation must be governed by its own peculiar circumstances.
Haughton argues that proof that it was not given a fair chance is shown by the fact that the September, 1976 inspection team was overloaded with representatives of Otis Elevator; that Otis had at least one week’s notice of the inspection; that Haughton was only informed of the inspection that morning; that a copy of the report of the September inspection critical of the manner in which Haughton was performing was never officially forwarded to Haughton, and that it received a copy by accident; and that it was never given a hearing prior to disqualification.
We find no fault on the part of the State in not informing Haughton sooner than the morning of the September inspection, nor do we find fault with the composition of the inspection team. It stands to reason that if the State wants to determine if its maintenance contractors are performing under the terms of the contract, it will not give very much advance warning. Otherwise, it is logical to assume that if the contractor knows sufficiently in advance when the inspection will take place, he will correct any deficiencies. Since a majority of the elevators being inspected at Charity Hospital were manufactured and installed by Otis Elevator, we find no error in members of the inspection team being employees of Otis Elevator.
Considering the position of this court as above announced, i. e. that an administrative agency or awarding authority must give notice of unfavorable charges, we are of the opinion that the State had the duty to forward to Haughton a copy of any and all uncomplimentary reports on the performance of Haughton under the contract as soon as same were available, so as to afford to Haughton the opportunity of rebutting any critical findings. However, since Haughton did receive a copy of the report, though not officially from the State, and responded thereto, we find that the breach of this duty has been cured.
It is, however, lastly argued that the State breached its duty to Haughton by not notifying Haughton of the inspection which took place immediately prior to the opening of the bids and of the disqualifying evidence found on that inspection, and of not affording Haughton an opportunity to be heard prior to disqualification. Considering all of the facts in this ease, particularly the Fournet report that Haughton responded to, that the deficiencies continued and were again noticed in the follow-up inspection, that a representative of Haughton was present at the office of the state official on July 1, when the disqualification was discussed, that same was conveyed to him, that we are left with the impression that he was not caught by surprise, and was allowed to rebut this evidence, we are of the opinion that the State has fulfilled its obligation of affording Haughton a fair chance to be heard.
This is not to say however that we entirely approve of the manner in which this contract letting was handled. Certainly it would have been better if Haughton had *696 received official notice of the Fournet report, of the results of the second inspection, and had been officially invited to rebut the evidence turned up by both inspections. The importance however is that the lowest bidder be apprised of the charges and be given an opportunity to rebut. Here, this has been done.
ERROR NO. 2
Without cataloging all of the defects the State found in the past performance of Haughton under the existing maintenance contract, and after a thorough review of the record, we are convinced, as was the trial judge, that the State had sufficient evidence to justify its disqualification of Haughton.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.
PONDER, J., dissents and assigns written reasons.