401 So.2d 1070 (1981)
BUDD CONSTRUCTION COMPANY, INC., et al., Plaintiffs-Appellees,
v.
CITY OF ALEXANDRIA, et al., Defendants-Appellants.
No. 8328.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1981.
*1071 Gravel, Robertson & Brady, Camille F. Gravel, Jr. and David W. Robertson, Garrett, Ryland and Nunnally, B. Dexter Ryland, Alexandria, for defendants-appellants.
Gold, Little, Simon, Weems & Bruser, Henry B. Bruser, III, Alexandria, Wray, Robinson, Mary & Kracht, W. P. Wray, Jr., Baton Rouge, for plaintiffs-appellees.
Before CULPEPPER, FORET and LABORDE, JJ.
FORET, Judge.
Budd Construction Company, Inc. (Budd) and the Associated General Contractors of America, Inc., Louisiana Highway, Heavy, Municipal and Utilities Branch (AGC), brought this action to enjoin the City of Alexandria, Louisiana (the City) from entering into a contract with the Slocum Construction Company (Slocum) for the replacement of the Applewhite Street Bridge (the project) over the Chatelain Lake Canal located within the city.
Petitioners requested, and the trial court issued, a temporary restraining order (TRO) forbidding the City from entering into the contract with Slocum, and the trial court set a hearing date on petitioners' rule for a preliminary injunction against the City. Slocum had not been made a party to this action and it intervened therein. Slocum filed a motion to dissolve the TRO and sought damages and attorney's fees for its wrongful issuance. Thereafter, the City joined with Slocum in filing a joint motion for the dissolution of the TRO and it also sought damages and attorney's fees.
Petitioners filed an exception of no right and no cause of action arguing that Slocum, as an intervenor, had failed to allege an independent right or cause of action for *1072 which it sought relief. Petitioners prayed that Slocum's intervention and motion to dissolve the TRO be dismissed, but the trial court overruled the exception.
The City and Slocum filed joint exceptions of no cause of action and no right of action. They alleged in the exception of no cause of action that petitioners had failed to state any ground for the issuance of an injunction. They argued in the exception of no right of action that petitioners had failed to allege that they were taxpayers of the City or that Budd was the "lowest responsible bidder" on the project. The trial court overruled both exceptions.
The City then filed an exception of failure to join an indispensable party alleging that Slocum should be made a defendant in these proceedings and the trial court sustained the exception.
The TRO was extended twice by the trial court to allow time for hearings on petitioners' rule for a preliminary injunction and, during this time period, this Court denied an application for writs filed by the City and Slocum. The trial court then rendered judgment overruling the motions to dissolve the TRO and granted the preliminary injunction.
The City and Slocum appeal from the trial court's judgment and present three issues:
(1) Whether the temporary restraining order was wrongfully issued and, if so, are appellants entitled to damages and attorney's fees;
(2) Whether the trial court erred in granting the preliminary injunction and, if so, are appellants entitled to damages and attorney's fees; and
(3) Whether petitioners have standing to sue for injunctive relief.

FACTS
The Alexandria City Council (the Council) adopted resolution number 1650-1980, on September 2, 1980, calling for the advertisement for bids on the project. The Council received two bids, one from Slocum, and the other from Budd. Budd's bid totaled $98,579.00, while Slocum's bid totaled $97,620.40, making it the apparent low bidder. However, Sam Craven (the City Attorney) ruled that Budd was the actual low bidder.
Craven based his ruling on the fact that the bid by Slocum contained a discrepancy. The discrepancy was found in connection with item # 5 of the bid form, which called for 570 square yards of Portland cement concrete paving slab including curb and gutter removed and replaced. The written unit price on the bid form was for $18.00 per square yard, while the price written in figures was $12.00 per square yard. Slocum's total bid price, using the $18.00 per square yard figure, amounted to $101,040.00, making it higher than the price contained in the bid submitted by Budd. However, the Council, relying on representations made by Slocum that it intended to be bound by the lower figure in its bid, decided, by a 4-3 vote, to award the contract to Slocum.
Budd and AGC instituted this action on November 4, 1980, and alleged that the action of the Council, in awarding the contract to Slocum, was a violation of the "Louisiana Public Bid Law" (LSA-R.S. 38:2184.1 et seq), the City's Home Rule Charter, and various ordinances and resolutions adopted by the Council.
The trial court rendered judgment on January 22, 1981, granting the preliminary injunction and denying appellants' motion to dissolve the TRO. That court then denied a motion for a partial new trial filed by the City and Slocum, and they were granted a devolutive appeal.

THE TEMPORARY RESTRAINING ORDER
Appellants contend that the TRO was wrongfully issued and that the trial court erred in denying their motion to dissolve it.
LSA-C.C.P. Article 3612 provides, in pertinent part:
"Art. 3612. Appeals
There shall be no appeal from an order relating to a temporary restraining order."
*1073 However, appellants take the position that this Court may review a trial court's order refusing to dissolve a TRO when an issue regarding such a refusal is presented on an appeal from the grant or denial of a preliminary injunction. We disagree and find that some of the jurisprudence cited by appellants clearly supports our decision that this Court has no power to hear an appeal from an order relating to a TRO under any circumstance, or is inapposite to the issue before us.[1]
Appellants cite Amacker v. Amacker, 146 So.2d 672 (La.App.1 Cir. 1962), where defendants appealed from a judgment of the lower court dismissing their motion to set aside a TRO and granting a preliminary injunction sought by plaintiff. Amacker found that plaintiff possessed an adequate remedy at law and was not entitled to injunctive relief. Amacker then stated on page 676 that:
"In view of the foregoing, it follows that the temporary restraining order and preliminary injunction herein issued by the trial court were improvidently and improperly granted and must be dissolved and set aside."
We fail to see how Amacker could dissolve the TRO issued by the trial court since it no longer existed at that time. A TRO, by its very nature, is dissolved by operation of law once the trial court grants or denies the request for a preliminary injunction by the party having the TRO issued.
The Louisiana Supreme Court, in Powell v. Cox, 228 La. 703, 83 So.2d 908 (1955), stated, 83 So.2d on page 910 that:
"A temporary restraining order, granted without notice to the opposite party, is intended to and does actually serve only as a temporary restraint on the defendant until the propriety of granting a preliminary injunction may be determined, objectively preserving the status quo until that determination. Its very name, `temporary restraining order', and the fact that it expires and ceases to exist within a time fixed after entry, not to exceed ten days, unless extended within the time fixed for good cause shown, definitely designates its meaning and purpose. Such an order is clearly distinguishable from a preliminary writ of injunction. Manifestly, it does not enjoy the force and vigor of the latter; granted without notice, it is merely preliminary to a hearing and wholly independent thereof.
. . . . .
As previously observed, a temporary restraining order expires within the time fixed by the court. It ceases to exist and its legal effectiveness is of no moment as of the date of the hearing of the rule nisi for either the granting or refusing of a preliminary injunction." (Emphasis provided.)
See also Ducros v. St. Bernard Parish Police Jury, 200 La. 766, 8 So.2d 694 (1942); Austin v. Currie, 16 La.App. 375, 134 So. 723 (2 Cir. 1931); Albert Pick & Co. v. Stringer, 171 La. 131, 129 So. 731 (La.1930); Lyons v. Campbell, 216 So.2d 895 (La.App.2 Cir. 1968), per Judge (now Justice) Dixon concurring; Snowden v. Red River and Bayou Glaises Levee and Drainage District, 172 *1074 La. 447, 134 So. 389 (1931), certiorari dismissed, 284 U.S. 592, 52 S.Ct. 198, 76 L.Ed. 510 (1931).
In the action before us, the trial court signed an order on November 4, 1980, directing the issuance of the TRO requested by petitioners conditioned upon their furnishing bond. The trial court also ordered appellants to show cause on November 10, 1980, why a preliminary writ of injunction in the form and substance of the TRO should not issue during the pendency of these proceedings. The trial court extended the duration of the TRO when it failed to conclude a hearing on the rule for the preliminary injunction held on November 10, 1980. The matter was continued until November 17, 1980. The hearing on the rule for the preliminary injunction and on appellants' motion to dissolve the TRO was further held at that time and the matter was again continued until November 24, 1980, with another extension of the TRO ordered. The trial court then signed an order on November 25, 1980, pursuant to an agreement of all parties that the TRO be extended indefinitely until further order of the court. The hearing on petitioners' rule for a preliminary injunction and appellants' motion to dissolve the TRO was finally concluded on December 10, 1980, with the matter being taken under advisement. The trial court rendered its judgment on January 22, 1981, denying appellants' motion to dissolve the TRO and granting the preliminary injunction sought by petitioners.
We find that the TRO issued by the trial court ceased to exist by operation of law on January 22, 1981, the date on which the preliminary injunction was granted.
Appellants argue that although the TRO was not dissolved on their motion and expired by operation of law, this Court should review the trial court's refusal to dissolve the TRO because they are entitled to recover damages and attorney's fees for its wrongful issuance. We disagree.
The Louisiana Supreme Court, in Ducros v. St. Bernard Parish Police Jury, supra, was faced with a similar argument which the Court summarized at 8 So.2d on page 696 as follows:
"In other words, the proposition is that, although the temporary restraining order was not dissolved on the defendant's motion and although it expired by its own terms at the time the preliminary injunction was granted, this court should nonetheless decide the merits of the case because the Police Jury is entitled to recover an attorney's fee for the wrongful issuance of the order."
Plaintiffs in Ducros sought to enjoin defendants from proceeding with a proposed special election and from holding a similar election in the future. The trial court issued the TRO sought by plaintiff and a rule requiring defendant to show cause why a preliminary injunction should not be granted. The rule was then made absolute and a preliminary injunction issued. Defendants prosecuted a devolutive appeal to the Louisiana Supreme Court. Ducros answered defendant's argument and held on page 696 that:
"There is no substance whatever in counsel's contention. Should we undertake to decide that the temporary restraining order was wrongfully issued, it would be tantamount to the allowance of an appeal from that order in plain violation of Section 5 of Act 29 of 1924. That section provides:
"No appeal shall be allowed from any order granting, continuing, refusing or dissolving a restraining order; but where upon a hearing, a preliminary writ of injunction shall have been granted, continued, refused or dissolved by an interlocutory order or decree, or an application to dissolve an injunction shall have been refused by such order or decree, a devolutive, but not a suspensive appeal, may be taken as a matter of right from such interlocutory order or decree; * * *."
The source provisions of LSA-C.C.P. Article 3612, supra, are former LSA-R.S. 13:4070 and Acts 1924, # 29, § 5.
The Louisiana Supreme Court, in Darmana v. New Orleans Stock Yard, Inc., 226 La. 897, 77 So.2d 528 (1954), had occasion to *1075 interpret former LSA-R.S. 13:4070. Plaintiffs in Darmana sought injunctive relief from the action of the majority of the board of directors of defendant, forbidding payment of certain salaries to defendants' officers. The trial court issued a TRO requested by plaintiffs and defendants filed a motion to dissolve the TRO. The trial court overruled the motion to dissolve and granted plaintiffs a preliminary injunction. Defendants perfected a devolutive appeal to the Louisiana Supreme Court and one of their complaints was the refusal of the trial court to grant their motion to dissolve the TRO. Darmana held at 77 So.2d on page 529 that:
"One of the errors complained of is the refusal of the trial judge to have granted defendants their motion to dissolve the temporary restraining order, but it is well settled that an appellate court will not review the action of the district court in refusing to dissolve a temporary restraining order. It cannot do so in face of the positive provision of section 5 of the original injunction act, No. 29 of 1924, now LSA-R.S. 13:4070, that `No appeal shall be allowed from any order granting, continuing, refusing or dissolving a restraining order, * * *.' As pointed out in Ducros v. St. Bernard Parish Police Jury, 200 La. 766, 8 So.2d 694, to review and pass on the correctness of the ruling by the district court on such motion would be tantamount to allowing an appeal from the order in plain violation of that section of the law. Like the temporary restraining order in that case, the one in this case expired in accordance with law when the preliminary injunction issued. After that it served no further purpose; it was dissolved by its own limitation, and we are not concerned on this appeal which is from the order granting the preliminary injunction, with the reasons of the district judge why he granted it or why he refused to dissolve it." (Emphasis provided.)
See Shingledecker v. Spencer, 157 So.2d 622 (La.App. 4 Cir. 1963), writ denied 245 La. 575, 159 So.2d 286 (1964) for a case in which the court reaches the same results as above under LSA-C.C.P. Article 3612.
We hold that this Court has no power on appeal to review a judgment of a trial court denying a motion to dissolve a TRO.
Appellants argue, however, that this Court, in Succession of Vice, 385 So.2d 554 (La.App. 3 Cir. 1980), reviewed a judgment by a trial court granting a TRO. The trial court there issued a temporary restraining order forbidding appellant and a financial institution from alienating or transferring certain certificates of deposit to any person other than the Vermillion Parish Clerk of Court. The trial court then granted appellee a preliminary injunction, to the same effect, after hearing. Vice found that appellee was not entitled to injunctive relief and further held on page 558 that:
"For the same reasons,4 we find that the temporary restraining order originally issued on September 7, 1978, and subsequent extensions thereof, were improvidently and improperly granted and must be dissolved.
La.C.C.P. Article 3608 provides in part that attorney's fees are recoverable when a temporary restraining order is dissolved after a trial on the merits. Roy v. Union Bank, 347 So.2d 286 (La.App. 3rd Cir. 1977) has interpreted this portion of the statute to mean that the temporary restraining order can be dissolved by the Court of Appeal which can then grant damages and/or attorney's fees for the first time on appeal. We will follow the Roy case and grant appellant attorney's fees in the amount of $500.00."
This portion of the decision in Vice is clearly incorrect under the above cited jurisprudence interpreting LSA-C.C.P. Article 3612 and its sources. Further, this Court in Roy v. Union Bank, supra, held that an appellate court could mandate the dissolution of a preliminary injunction, rather than a TRO, on appeal and then grant damages and attorney's fees if warranted under the provisions of LSA-C.C.P. Article 3608.
We disagree with Vice to the extent that it conflicts with this opinion and the jurisprudence *1076 of the Louisiana Supreme Court cited above.[*]

THE PRELIMINARY INJUNCTION
Appellants contend that the trial court wrongfully issued the preliminary injunction requested by appellees, which prohibits the City from entering into a contract with Slocum for construction of the project. Appellants' position is that a public agency, such as the Council, has wide discretion in awarding public works contracts and that there was no abuse of discretion by the Council in awarding this contract to Slocum. Appellants further contend that the trial court erred in granting the preliminary injunction because appellees failed to allege or prove that the action of the Council was taken in violation of a prohibitory law or that they would suffer irreparable injury without injunctive relief.
Appellees, to the contrary, contend that the Council arbitrarily decided to ignore its own specified procedure for accepting and tabulating bids in making its determination that Slocum was the "lowest responsible bidder" on this public works contract and that this action by the Council does constitute a violation of a prohibitory law, i. e., LSA-R.S. 38:2212, infra. Appellees further contend that Budd was actually the "lowest responsible bidder" and that because the Council did violate a prohibitory law, they did not have to allege or prove irreparable injury to obtain a preliminary injunction.
It is unnecessary to allege or prove irreparable injury in order to enjoin the action of a municipal council, if the threatened action of the municipal council is in direct violation of a prohibitory law. Bardwell v. Parish Council of Parish of East Baton Rouge, 216 La. 537, 44 So.2d 107 (La.1949); Connell v. Commission Council of City of Baton Rouge, 153 La. 788, 96 So. 657 (1923); Lindsey v. Holland, 95 So.2d 754 (La.App. 1 Cir. 1957); Whalen v. Brinkmann, 258 So.2d 145 (La.App. 1 Cir. 1972). LSA-R.S. 38:2212, infra, is a prohibitory law. Haughton Elevator Division v. State, Division of Administration, 367 So.2d 1161 (La.1979).
The basic statutory law governing this issue is contained in LSA-R.S. 38:2184.1, et seq. These statutes provide that public works projects exceeding the sum of $10,000.00 be advertised for bids and that the contract be awarded to the "lowest responsible bidder".
LSA-R.S. 38:2212 provides in pertinent part:
"§ 2212. Advertisement and letting to lowest responsible bidder
A. (1) All public work exceeding the sum of ten thousand dollars including both labor and materials and all purchases of materials or supplies exceeding the sum of two thousand five hundred dollars to be paid out of public funds, to be done by a public entity shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised, and no such public work shall be done and no such purchase shall be made except as provided in this Part. All such bids shall be either hand delivered by the bidder or his agent in which instance the deliverer shall be handed a written receipt, or such bid shall be sent by registered or certified mail with a return receipt requested. Provided, however, that the requirement that all bids be sent by registered or certified mail shall not apply to bids received by municipal and parochial governing authorities." (Emphasis provided.)
It is well established by the Louisiana jurisprudence interpreting this statute or its predecessors that a low bidder may, on a contract so advertised, sue to set aside the award of the contract to another bidder and may enjoin the agency from the execution of such contract, where the agency arbitrarily rejected the low bid. Haughton Elevator Division v. State, Division of Administration, supra; Sternberg v. Board of Commissioners of Tangipahoa Drainage *1077 District No. 1, 159 La. 360, 105 So. 372 (1925); Standard Highway Company, Inc. v. Police Jury of Tangipahoa Parish, 158 La. 294, 103 So. 819 (La.1925); St. Landry Lumber Co. v. Mayor and Board of Aldermen of Town of Bunkie, 155 La. 892, 99 So. 687 (1924).
LSA-R.S. 38:2212, supra, insofar as it requires advertising and the obtaining of competitive bids, is a prohibitory law founded on public policy. It was enacted in the interest of the taxpaying citizens of this State, and has for its purpose their protection against contracts of public officials awarded through favoritism and possibly involving exorbitant and extortionate prices. Haughton Elevator Division v. State, Division of Administration, supra; Smith v. Town of Vinton, 216 La. 9, 43 So.2d 18 (La.1949); Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (La.1943).
We agree with the trial court and appellants that the crucial issue before us is whether the City was arbitrary or unfair in making its determination of which of the two bidders on this public works contract was the "lowest responsible bidder". If the Council acted arbitrarily or unfairly in making this determination, then its action was in violation of a prohibitory law, i. e., LSA-R.S. 38:2212, supra.
LSA-R.S. 38:2212 vests in the public agency awarding a public works contract the power and discretion to determine the responsibility of the bidder and to reject all bids if none are satisfactory. However, the law does not permit the arbitrary selection of one which is higher and the rejection of others which are lower. The discretion must be exercised in a fair and legal manner and not arbitrarily. Haughton Elevator Division v. State, Division of Administration, supra; St. Landry Lumber Company v. Mayor and Board of Aldermen of Town of Bunkie, supra.
Louisiana follows the general rule of vesting a public agency, in awarding a public works contract, with discretion subject to judicial review. Courts will not substitute their judgment for the good faith judgment of an administrative agency. Haughton Elevator Division v. State, Division of Administration, supra.
T.L. James & Co. v. Jefferson Parish Council, 161 So.2d 597 (La.App. 4 Cir. 1964), stated on pages 599 and 600 that:
"The law governing the acceptance of bids for public works, where the statute requires the award be made to the `lowest bidder,' is clearly stated in 43 American Jurisprudence, § 44, p. 786, verbo `Public Works and Contracts,' to the effect that, when the controlling statute or ordinance requires, without qualification, the letting of a pubic contract to the lowest bidder, the duty of awarding the contract is generally held to be ministerial and not judicial, and the contract must be awarded to the bidder whose bid is actually the lowest in amount. Usually, however, the contract is not required to be awarded to the lowest bidder, without qualification, but to the `lowest responsible bidder,' or `lowest and best bidder.' There is but little dissent from the general rule that, in determining who is such `lowest responsible bidder,' or `lowest and best bidder,' public boards and officials are vested with wide discretion. Their decision, when based upon an honest exercise of the discretion thus vested in them, will not be interfered with by the courts, unless apparently arbitrary or capricious." (Emphasis provided.)
See also Williams v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 388 So.2d 438 (La.App. 2 Cir. 1980); Tide Equipment Company v. Pointe Coupee Parish Police Jury, 312 So.2d 154 (La.App. 1 Cir. 1975), writ denied, 315 So.2d 38 (La.1975); Toye Bros. Yellow Cab Company v. City of New Orleans, 264 So.2d 768 (La.App. 4 Cir. 1972), writ denied 263 La. 102, 267 So.2d 210 (1972), 64 Am.Jur.2d, § 68, page 924, verbo "Public Works and Contracts".
The Council, by resolution # 1650-1980, adopted on September 2, 1980, ordered the advertisement for bids on the construction of the Applewhite Street Bridge Project. *1078 Advertisement was made according to law and the Council received two bids on the project, one from Slocum and the other from Budd. Pursuant to resolution # 1650-1980, the bids were opened on September 16, 1980, at a regular meeting of the Council and were referred to the Mayor and the appropriate committee for tabulation and recommendation. However, it was noticed during tabulation that the bid submitted by Slocum contained a discrepancy with respect to item # 5 on the bid form.[2]
Slocum was notified of the fact that its bid contained a discrepancy by letter dated September 23, 1980, from Jackie P. Adams, City Clerk, and that the City Attorney had ruled that the low bidder on the project was Budd. The basis of the City Attorney's ruling was that when the discrepancy contained in Slocum's bid was resolved under the existing policy and procedures of the Council for resolving such discrepancies, Slocum's bid totaled $101,753.20, or $3,174.20 higher than Budd's bid. Slocum was invited to attend a meeting of the Council, if it wanted to be heard in connection with the award of this contract. Slocum, through counsel, sent a letter to the mayor and council dated September 30, 1980, in which it expressed its willingness to be bound by the lower figure found in its bid and contended that it was the "lowest responsible bidder" on the contract.
The minutes from the council meeting held on September 30, 1980, reflected that the Council had taken no action with respect to awarding this contract and that none would be taken until after an informal fact-finding meeting, which would be held on October 7, 1980. Apparently the matter was discussed at this informal meeting. Thereafter, the Council, by a 4-3 vote, passed ordinance # 174-1980, determining that Slocum was the low bidder on the project and authorizing the mayor to enter into a contract with Slocum.
Appellees contend that if the Council had followed its policies and procedures for tabulating bids, then Slocum's bid would have totaled $101,753.20, making Budd the "lowest responsible bidder" with a bid of $98,579.00. Appellees further contend that the arbitrary action of the Council in selecting Slocum's bid, which it contends was the higher bid, is a violation of LSA-R.S. 38:2212. Essentially, appellees argue that the Council adopted certain procedures and policies for accepting and tabulating bids received on public works contracts, which it arbitrarily chose to ignore in awarding this particular public works contract. Those procedures and policies are derived from a number of different sources. Appellees first cite a document entitled, "General Specifications for Street Paving and Storm Drainage, City of Alexandria, Louisiana (February, 1963)." Specifically, Division I (General Requirements and Covenants), Section 2.05 (Proposal Requirements and ConditionsPreparation of Proposal)[3] of *1079 that document which provides in pertinent part that, "in case of conflict between the written unit price and the unit price in figures, the written unit price shall govern".
Appellees also cite Article V, § 10 of the Home Rule Charter of the City of Alexandria, which is entitled "Financial ProceduresPurchasing", and provides:
"Section 5-10. Purchasing.
A. Purchasing of all property, supplies, materials and services shall be under a central purchasing system and shall be in accordance with applicable State law, and Council policy and administrative requirements.
B. All public works aggregating $7,500.00 or more shall be advertised and let by contract to the lowest responsible bidder in accordance with applicable Council policy and administrative requirements." (Emphasis provided.)
The record reveals that resolution # 1379-1979, adopted by the Council on September 18, 1979, as amended by resolution # 1580-1980, adopted on June 10, 1980, provides in Section IV, Subsection (dd) that: "In case of a conflict between the written unit price and the unit price in figures, the written unit price shall govern." The preamble to resolution # 1379-1979 specifically states that it is "A resolution establishing certain council policy and procedures dealing with purchasing for the City of Alexandria as provided in Section 5-10 of the Home Rule Charter."

"RESOLUTION NO. 1379-1979
A RESOLUTION ESTABLISHING CERTAIN COUNCIL POLICY AND PROCEDURES DEALING WITH PURCHASING FOR THE CITY OF ALEXANDRIA AS PROVIDED IN SECTION 5-10 OF THE HOME RULE CHARTER
WHEREAS, the Alexandria City Council now desires to establish certain Council policy and administrative requirements dealing with purchasing for the City of Alexandria as provided in Section 5-10 of the Home Rule Charter, now therefore
BE IT RESOLVED by the Council of the City of Alexandria, Louisiana, in legal session convened, that the following policies and administrative requirements dealing with procurements be and they are hereby established:"
* * * * * *
"SECTION VI: Procedures and policies for receiving bids.
(a) Established. For the purpose of receiving bids on construction contracts in excess of one thousand dollars ($1,000) and materials and supplies exceeding the sum of two thousand five hundred dollars ($2,500) pursuant to the purchasing regulations of the City, the following procedures and policies are hereby established:"
* * * * * *
"(dd) Each bidder must submit his proposal on the proposal form furnished by the purchasing agent. Altered or substitute *1080 forms will not be accepted. Bidders shall examine carefully the proposal form before submitting same in order to insure that unit price, both in words and numerals, is submitted on each and every item on which all bidders are required to submit a bid and that the total cost of the item has been extended as provided on the bid form. In case of a conflict between the written unit price and the unit price in figures, the written unit price shall govern. Should the written unit price be illegible, the unit price in figures shall govern. In the event of objections on the form, the bidders must immediately notify the Council in writing and state the grounds for his objections." (Emphasis provided.)
Emett Mathews, Jr., the city engineer, was called as a witness under the rule of cross-examination by appellees. He stated that he had worked for the city in that capacity for approximately 32 years and that checking the bid proposals for work the city wanted done was one of his duties. This included the receipt and tabulation of bids. He also testified, under strenuous objection by counsel for appellants, as to the city's uniform rule or practice for handling discrepancies between written unit prices in bids and unit prices in figures. He stated that it was the practice of the city to use the written, spelled-out figure. He also stated that he would only report the discrepancy to the Council, which made the final ruling on it. However, when asked how the Council had handled such discrepancies in the past, he replied, "They applied the written word."
It is clear that the Council ignored both the ruling of the city attorney and the plain provisions of its own written policies and procedures in making its determination that Slocum was the "lowest responsible bidder" on the project. Yet, appellants contend that this decision was in no way arbitrary or an abuse of the Council's discretion. Further, appellants argue that the trial court made no finding that the Council had acted arbitrarily in making its decision. The record, in fact, reveals the contrary. The trial court specifically stated in its written opinion that:
"... Furthermore, the ability of the City to follow or not to follow the bidding procedures that it, itself, has promulgated as it sees fit seems to be the very essence of arbitrary power.

"On a somewhat more practical vein, a holding that the City may or may not adhere to its own procedures without violating the Public Bidding Laws would allow by indirection that which is otherwise prohibited. Such a rule would allow, as petitioner has suggested, a favored company to, in effect, make two bids by deliberately doing what Slocum did by inadvertance and, at the very least, gain an unfair advantage over his not so favored competitors. Judicial review would be meaningless except in cases of outrageous misconduct because, as in this case, it is virtually impossible to ascertain the subjective intent when the bid was submitted." (Emphasis provided)
We fail to understand how a public agency can formulate policies and procedures, which it will use in making determinations regarding the awarding of public works contracts, and then simply disregard those policies and procedures in specific instances and, yet, contend that it is not acting arbitrarily. We agree with the trial court and find that the Council acted arbitrarily. We further find that this constitutes an abuse of the Council's admittedly wide discretion in handling the award of public works contracts.
Appellants argue that the advertisement for bids on this public works project specifically stated that:
"Contract will be let to the lowest responsible bidder who bids according to requirements with the right reserved to reject any and all bids and to waive informalities".
Appellants then argue that the discrepancy contained in Slocum's bid was a mere informality which could be waived. We disagree. It would be contrary to the applicable statutes and jurisprudence to hold that *1081 the City could avoid its legal duty to act in a fair and legal manner, and not arbitrarily, by the inclusion of such a provision in its advertising for bids on a public works project.
We find that Budd was the "lowest responsible bidder" on this public works project and that the Council arbitrarily selected the higher Slocum bid. We further find that this action of the Council was a direct violation of LSA-R.S. 38:2212, and, therefore, appellees were entitled to the preliminary injunction granted them by the trial court.

PETITIONERS' STANDING TO SEEK INJUNCTIVE RELIEF
Appellants contend that petitioners lacked the necessary standing to sue for injunctive relief against the City's action in awarding the contract to Slocum.
LSA-C.C.P. Article 681 provides:
"Art. 681. Real and actual interest required
Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts."
The peremptory exception of no right of action raises the question of whether the plaintiff has any interest in enforcing judicially the right asserted. Lambert v. Donald G. Lambert Construction Company, 370 So.2d 1254 (La.1979); see also Official Revision Comments to LSA-C.C.P. Article 681, supra.
Appellants filed an exception of no right of action in the court below. They argued in their exception, as they now do on appeal, that Budd and AGC had failed to allege that they were taxpayers of the City of Alexandria. Further, they also argue that Budd was not the low bidder on the contract. The trial court overruled the exception of no right of action.
The only two objections which should be raised in the peremptory exception of no right of action are either lack of interest or lack of capacity in the plaintiff to institute the action. Broday v. Broday, 360 So.2d 645 (La.App. 3 Cir. 1978). Appellants make no objection that either Budd or AGC lacked the procedural capacity to institute this action. Rather, appellants' objection is that neither Budd nor AGC have any legal interest in enforcing the rights asserted in this action.
The want of interest raised by the exception of no right of action relates primarily to whether the particular plaintiff falls as a matter of law within the general class in whose favor the law grants the cause of action sought to be asserted by the suit. Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3 Cir. 1967); Curry v. Iberville Parish Sheriff's Office, 378 So.2d 159 (La. App. 1 Cir. 1979).
We have found that Budd was the "lowest responsible bidder" on this public works contract. We have also found that the Council arbitrarily rejected Budd's low bid. Therefore, under the explicit holding of Haughton Elevator Division v. State, Division of Administration, supra, Budd had the standing to sue to enjoin the Council from the execution of this public works contract.
A more serious question arises with respect to whether AGC had the standing to sue for injunctive relief in this matter. Appellees allege in their petition that AGC is a taxpayer of the State of Louisiana and a Louisiana corporation whose membership is composed, inter alia, of contractors engaged in the construction of projects of the type and kind which is the subject matter of this lawsuit, including members domiciled and doing business in Rapides Parish, Louisiana. It is further alleged that AGC is keenly concerned with maintenance of the integrity and public faith and confidence in the public bid law process in this State.
There was evidence at the trial of this matter that Budd pays AGC $450.00 a year as membership dues plus 1/8 of 1% of the contract price, up to a million dollars, on public and municipal contracts awarded to Budd. Therefore, AGC would have received 1/8 of 1% of the contract price here had Budd been awarded this public works *1082 contract. The trial court, over objection by appellants that it was beyond the pleadings, allowed evidence to be introduced to show that AGC was also a taxpayer of the City of Alexandria, as well as a taxpayer of the State.
The trial court, in overruling appellants' exception of no right of action, found no merit to appellants' contentions that AGC lacked the necessary standing to sue for injunctive relief. Our review of the record establishes that such a finding is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
For the above and foregoing reasons, the judgment of the trial court granting the preliminary injunction requested by appellees is affirmed.
All costs of this appeal are assessed against defendants-appellants.
AFFIRMED.
LABORDE, J., concurs in the result.
NOTES
[1] Carson v. Thomas, 342 So.2d 1219 (La.App.2 Cir. 1977) and Intrastate Pipeline Corporation v. Pontchartrain Motor Company, Inc., 254 So.2d 693 (La.App.4 Cir.1971) clearly support our decision that this Court has no power to hear an appeal from an order relating to a temporary restraining order under the provisions of LSA-C.C.P. Article 3612. Carson v. Thomas, supra, found that a decree for a money judgment for the wrongful issuance of a temporary restraining order may be appealed from, even though it is coupled with an interlocutory order. Intrastate Pipeline Corporation v. Pontchartrain Motor Company, Inc., supra, found that plaintiff had a right to appeal from the denial of a preliminary injunction, even though the dissolution of a temporary restraining order is contained in the same judgment.

Town of Logansport v. Copley, 313 So.2d 901 (La.App.2 Cir. 1975) simply held that the issues of whether a temporary restraining order was wrongfully issued and the right of the party restrained to damages and attorney's fees for the wrongful issuance remained viable issues for consideration by the trial court, even though the TRO had had expired by its own terms while the trial court had taken the motion to dissolve it under advisement.
[*] For the latest expression of this Court on this issue, see Ducote v. Couvillion, 401 So.2d 621 (La.App. 3 Cir. 1981).
[2] 
[3] "2.05 Preparation of Proposal: The bidder must submit his proposal on the prescribed form and the blank spaces in the proposal must be filled in correctly, where indicated, for each and every item for which a quantity is given, and the bidder must state the prices (written in ink, both in words and numerals), required to submit a bid. The bidder will be for which he proposes to do each item of the work contemplated.

Bidders are required to examine carefully the proposal form before submitting same in order to see that a unit price is submitted on each and every item on which all bidders are responsible for all errors or omissions in his proposal and if a bidder fails to submit a unit price for any item or items upon which a bid is required, his proposal shall be completed by the insertion of the lowest unit price or prices submitted for the item or items in any regular bid on the project. Such a unit price or prices shall be used in the contract, if awarded, as if originally submitted. In case of a conflict between the written unit price and the unit price in figures, the written unit price shall govern. Should the written unit price be illegible, the unit price in figures shall govern. The bidder shall sign his proposal correctly. If the proposal is made by an individual, his name and post office address must be shown. If made by a firm or partnership, the name and post office address of each member of the firm or partnership must be shown. If made by a corporation, the person signing the proposal must show the name of the State under the laws of which the corporation was chartered and the name, titles, and business address of the president, secretary and treasurer and, if required, the one signing the proposal as the agent of a firm or corporation must furnish legal evidence that he has a rightful authority to such signature, and that the signature is binding upon the firm or corporation. Proposals must be signed in ink." (Emphasis provided.)