FORET, Judge.
Nationwide Financial Corporation of Louisiana (plaintiff) brought this action for a deficiency judgment to recover the sum of $16,557.45 allegedly owed it by defendants, Kaplan Mobile Home Sales, Inc. (Kaplan) and Warren J. Simon (Simon).
The trial court, after trial on the merits, rendered judgment (1) in favor of defendant, Simon, and against plaintiff, sustaining peremptory exceptions of no right of action and no cause of action filed by him, and (2) in favor of plaintiff and against Kaplan, ordering Kaplan to pay plaintiff the sum of $6,328.28, together with legal interest from date of judicial demand. Plaintiff’s request for attorney’s fees was denied.
Plaintiff appeals from the trial court’s judgment and raises the following issues:
(1) Whether the trial court committed manifest error in sustaining the peremptory exceptions of no right of action and no cause of action filed by defendant, Simon;
(2) Whether the trial court committed manifest error in finding that plaintiff had failed to comply with the terms of the “Mobile Home Dealer Agreement”; and
(3) Whether the trial court committed manifest error in finding that plaintiff was unable to collect attorney’s fees.
FACTS
Two contracts were entered into by the parties on May 3, 1978. The first was a “Mobile Home Dealer Agreement” (Dealer Agreement) between plaintiff and Kaplan, which Simon signed as Kaplan’s president. In this contract, plaintiff agreed to finance the retail sales of mobile homes by Kaplan, by purchasing “... conditional sales con *445 tracts, chattel mortgages, security agreements, or other title retaining or lien instruments ... evidencing the time sale of Mobile Homes and/or Travel Trailers and for Motor Homes . . .
The second contract was a “Continuing Guaranty”, executed in favor of a number of companies by Simon, in which he agreed to pay these companies any debts due them from Kaplan “as fully as if each indebtedness was directly owing to said Finance Company by him ... ”.
Plaintiff, pursuant to the contracts, undertook to finance the retail sales of two mobile homes by Kaplan. One was sold to Dale Mott (Mott), and the other to Chris Menard (Menard). Ultimately, these persons were unable or unwilling to pay for the mobile homes. Menard executed an “Authority for Disposition”, in favor of plaintiff, by which he voluntarily returned the mobile home to plaintiff in return for a release from any further liability on the unpaid balance on it. Plaintiff later sold it. Mott filed for bankruptcy, and his bankruptcy trustee sold his mobile home to plaintiff, who in turn resold it.
Plaintiff, through these re-sales, was unable to realize the full amount owed it for financing the original sales of these mobile homes. It brought this action against defendants seeking to recover its losses based on the provisions of the above mentioned contracts. Defendants answered, denying the significant allegations of plaintiff’s petition.
DEFENDANT SIMON’S EXCEPTIONS
Simon filed peremptory exceptions of no right of action and no cause of action after plaintiff had rested its case. As to the exception of no right of action, Simon argued that plaintiff was not a party to the Continuing Guaranty and had no right to bring any action against him based on that contract. To the contrary, plaintiff pointed to the following language contained in that contract, arguing that it was a party to that instrument:
“Warren J. Simon and each of them hereinafter called the ‘Guarantors’ do hereby, jointly and severally guarantee to FIRST NATIONAL CITY CORPORATION, its subsidiaries, FIRST NATIONAL CITY BANK (“CITIBANK”), NATIONWIDE FINANCIAL SERVICES CORPORATION, ADVANCE MORTGAGE CORPORATION, and all subsidiaries and affiliates of the foregoing, hereinafter called the ‘Finance Company’, that ...” (Emphasis ours.)
Simon contended that there had been no evidence adduced to show that plaintiff was a subsidiary or affiliate of any of the named entities contained in the Continuing Guaranty. The trial court first noted that plaintiff was not named as a subsidiary or affiliate in the contract. It then stated that:
“Further, the guarantee states that “this agreement constitutes the entire contract and on [sic] waivers or modifications shall be valid unless written upon or attached to this contract.” No such attachment or writing includes plaintiff as a subsidiary. The Court finds that the “continuing guarantee” is ambiguous in that it attempts to favor all subsidiaries yet limits the agreement to the face of the contact [sic] or attachments. It is well settled that an ambiguous contract must be read against the maker. Accordingly, the Court finds that only the subsidiaries actually named were parties to the agreement.
“The Court finds that plaintiff was not a party to the continuing guarantee, nor did Mr. Simon, individually, derive any benefits from doing business with plaintiff. Accordingly, the Court sustains Mr. Simon’s exceptions of no right and no cause of action.”
It is our opinion that these findings of the trial court are clearly wrong, and that Simon’s exceptions of no right of action and no cause of action should have been overruled. We find no ambiguity in the Continuing Guaranty in its designation of the parties in whose favor Simon executed the contract. It clearly indicates that these parties include all subsidiaries and affiliates of the named companies, as illustrated be *446 low. Plaintiff has proven, by a preponderance of the evidence, that it is a subsidiary of one or more of these companies.
J.R. Vallee, Jr., plaintiff’s Collection Manager, indicated that plaintiff was such a subsidiary. The Dealer Agreement specifically names plaintiff as the entity to whom the offer, contained therein, was being made by Kaplan. Simon acknowledged that he had been informed during negotiations with plaintiff concerning the Dealer Agreement that he would have to execute a continuing guaranty of Kaplan’s corporate obligations. He identified the Continuing Guaranty, executed by him and introduced in evidence, as being the one he was informed he would have to execute. However, Simon became evasive when plaintiff’s counsel attempted to have him admit that he knew that he had executed the Continuing Guaranty in favor of plaintiff. He began to refer to the entities, in whose favor the contract had been executed, as the “lending agency”, “CITICORP”, “NATIONWIDE”, and “Nationwide Financial Corporation”. Simon did admit that he personally guaranteed the corporate obligations of Kaplan to Nationwide Financial Corporation by means of the Continuing Guaranty. Finally, while the Dealer Agreement specifically states that Kaplan’s offer is being made to Nationwide Financial Corporation of Louisiana (plaintiff), it is accepted by Steven J. Lanigan on behalf of Nationwide Financial Services Corporation, one of the companies named in the Continuing Guaranty.
The peremptory exception of no right of action raises the question of whether the plaintiff has any interest in enforcing judicially the right asserted. Lambert v. Donald G. Lambert Construction Co., 370 So.2d 1254 (La.1979); Budd Construction Co., Inc. v. City of Alexandria, 401 So.2d 1070 (La.App. 3 Cir.1981), writ denied, 404 So.2d 1262 (La.1981); see Official Revision Comments to LSA-C.C.P. Article 681.
The want of interest raised by the exception of no right of action relates primarily to whether the particular plaintiff falls as a matter of law within the general class in whose favor the law grants the cause of action sought to be asserted by the suit. Budd Construction Co., Inc. v. City of Alexandria, supra; Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3 Cir.1967); Curry v. Iberville Parish Sheriff’s Office, 378 So2d 159 (La.App. 1 Cir.1979).
LSA-C.C. Article 1799 provides:
“Art. 1799. Right of judicial enforcement
Art. 1799. It is a presumption of law that in every contract each party has agreed to confer on the other the right of judicially enforcing the performance of the agreement, unless the contrary be expressed, or may be implied.”
Plaintiff seeks to judicially enforce certain rights granted it in the Continuing Guaranty, which Simon has admitted is a valid contract. We have found that plaintiff is a party to that contract. Thus, plaintiff falls as a matter of law within the general class (parties to a contract) in whose favor LSA-C.C. Article 1799 grants a cause of action to judicially enforce the performance of a contract. There is no merit to Simon’s exception of no right of action [1]
Under the terms of the Continuing Guaranty, Simon has personally guaranteed the payment of Kaplan’s debts to plaintiff. We overrule both the exception of no right of action and no cause of action.
PLAINTIFF’S ALLEGED FAILURE TO COMPLY WITH THE TERMS OF THE DEALER AGREEMENT
Plaintiff contends that the trial court erred in finding that it had failed to comply with the terms of the Dealer Agreement in the manner in which it handled the acquisition and resale of the mobile home Kaplan had originally sold to Mott.
*447 Vallee (plaintiff’s Collection Manager) gave the following testimony concerning the mobile home sold to Mott. He noted that there were problems with this sale from the beginning. The document evidencing the sale recited that Mott had put $1,907 cash as a down payment on the mobile home. However, a preverification check revealed that Mott had only put $700 cash as a down payment along with $1200 worth of furniture. Douglas Wrinkle, Ka-plan’s Secretary-Treasurer at the time, corroborated this, which constitutes a violation of some of the provisions of the Dealer Agreement by defendant, Kaplan. Mott had trouble making the payments on the mobile home and eventually instituted bankruptcy proceedings. He had purchased the mobile home on October 4, 1978, and filed for bankruptcy on November 2, 1979. The bankruptcy trustee sold the mobile home to plaintiff on April 16, 1980.
Vallee testified that on August 26, 1980, he sent Kaplan a letter known as a “REPOSSESSION PICK-UP ORDER” requesting that Kaplan notify plaintiff of the date on which the Mott mobile home was picked up and placed on Kaplan’s lot. Vallee identified a “REPOSSESSION/CHARGE-OFF FORM” dated April 22,1980, relating to the Mott mobile home. He stated that plaintiff had formal notice at this time that the mobile home could be picked up from the bankruptcy court and had requested defendants to do so. However, Simon wanted to leave the trailer where it was to possibly sell it to somebody else, rather than pick it up and bring it to Kaplan’s lot. Plaintiff agreed to this.
Vallee stated that plaintiff usually gave dealers six months to sell mobile homes that had been repossessed. Defendants were unable to sell the trailer within this time period, and this is when plaintiff sent them the above mentioned pick-up order in August. Plaintiff, itself, finally retrieved the mobile home on September 23, 1980, and later sold it. Simon admitted that plaintiff had financed the purchase of the mobile home by Mott, and that the sales contract had been assigned to it. Wrinkle confirmed this even though the assignment portion of that contract is blank where the name of the assignee is supposed to be filled in. However, Simon was unable to recall whether he had received the pick-up order on the Mott mobile home from plaintiff. He stated that plaintiff had made no offer to allow him to place the Mott mobile home on his lot, and that he thought, "... they had the whole prerogative to do whatever they wanted with it ...” Simon testified that he was given no opportunity to repurchase the Mott mobile home. However, Simon admitted that, while he knew the Mott mobile home had been repossessed by plaintiff, he made no offer to repurchase it from plaintiff.
The evidence shows that the assignment of the Mott contract to plaintiff by Kaplan was made “with recourse”.. The assignment contains the following language:
“1. RECOURSE: Seller absolutely and unconditionally guarantees the prompt payment of the unpaid balance of the Total of Payments, after deducting the unearned finance charge, when due, whether at maturity or by acceleration together with all costs, expenses and reasonable attorneys’ fees incurred in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this guaranty or default of Buyer, or arising by reason of any extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and waives any and all defenses arising out of the guarantor relationship.” (Emphasis ours).
The Dealer Agreement contains the following paragraphs pertinent to a resolution of the issue before us:
“6. With respect to contracts assigned and/or endorsed to you by us, “with recourse”, we promise that in the event of default by the retail purchaser under any of the terms or conditions of the contract that we will pay you the then unpaid balance on the contract, less your custom *448 ary prepayment rebate plus an amount equal to the same percentage of our Dealer Reserve (Sub Paragraph B of Paragraph 1) as the prepayment rebate bears to the total finance charge, and you shall reassign to us, without recourse or warranty, any and all documents originally assigned by us to you on such paper.
7. We waive presentment, demand, notice and protest on all contracts, and all other demands and notices, and consent that you may grant extensions of time, make compromises with the retail time sale purchaser or other person liable on the contracts, and otherwise handle the making of collections in accordance with your best judgment, without affecting our liability hereunder.” (Emphasis ours.)
(“we” and “us” refer to Kaplan, while “you” refers to plaintiff.)
As can be seen, paragraph 6 sets out in some detail the procedure to be followed by the parties in the event of default by the retail purchaser. Paragraph 7 gives plaintiff much broader powers in handling such matters. The trial court focused on paragraph 6 in making its finding that plaintiff had failed to comply with the terms of the Dealer Agreement. It concluded that defendants had been given no opportunity to resell the Mott mobile home before plaintiff picked it up and resold it. However, the record shows that this conclusion is clearly wrong. As noted above, defendants were given six months to resell the Mott mobile home, but failed to do so. Further, while defendants knew that the Mott mobile home had been repossessed by plaintiff, they made no effort to pay plaintiff the unpaid balance on the Mott contract, etc., as contemplated by paragraph 6. In any event, we find that plaintiff acted well within the broad range of discretion given it by paragraph 7 and the recourse provisions of the assignment agreement by which plaintiff acquired the Mott contract.
It is our opinion that the trial court’s finding that plaintiff had failed to comply with the terms of the Dealer Agreement in repurchasing and reselling the Mott mobile home is clearly wrong.
The evidence shows that defendants are liable, in solido[2], to plaintiff for the sum of $9,844.57 on the Mott contract. The trial court awarded plaintiff $6,328.28 on the Menard contract. Defendants have taken no appeal from the trial court’s judgment, nor have they answered plaintiff’s appeal. Thus, the trial court’s judgment regarding the Menard contract is final. We find that defendants are indebted to plaintiff in the total amount of $16,172.85, with legal interest from date of judicial demand until paid.
ATTORNEY’S FEES
Plaintiff contends that the trial court committed manifest error in finding that it was unable to collect attorney’s fees from defendants as it had failed to follow the procedure set out in the Dealer Agreement for collecting amounts owed it by defendants upon default of the retail purchaser. Plaintiff argues that a certain provision of the Dealer Agreement specifically grants it the right to recover attorney’s fees in a situation such as that in the action sub judice.
We are in partial agreement with the trial court’s finding, but for different reasons. We have reviewed the provisions of the Dealer Agreement relied on by plaintiff. It provides that plaintiff may recover attorney’s fees as an expense of collection from defendant, Kaplan, when Kaplan has breached certain warranties and representations, enumerated in paragraph 3 of the Dealer Agreement, regarding a retail sales contract purchased by plaintiff from Ka-plan. As noted above, there was some evidence to the effect that one of these representations and/or warranties may have *449 been breached. However, plaintiff took no action with respect to that breach. It has made no use of that breach as a basis for its present action against defendants. We can find no provision in the contracts entered in evidence which would allow plaintiff to collect attorney’s fees from Kaplan under the facts and circumstances present in this action.
However, the Continuing Guaranty does provide that, “... in the event the said Debtor (Kaplan) fails at any time or times to promptly pay any and all indebtedness which now exists and/or may hereafter accrue from said Debtor to said Finance Company (plaintiff) as the same becomes due, the undersigned (Simon) and each of them hereby jointly and severally promise to pay any and all such indebtedness as the same becomes due from said Debtor to said Finance Company, forthwith, upon demand, with all attorney’s fees incurred in enforcing payment under this instrument ... ”.
It is obvious that plaintiff has incurred attorney’s fees in enforcing payment by Simon of Kaplan’s debts, which Simon personally obligated himself to pay under the provisions of the Continuing Guaranty. Thus, Simon is liable to plaintiff for these attorney’s fees.
We are unable to make a determination of the amount of attorney’s fees incurred by plaintiff in enforcing payment under the terms of the Continuing Guaranty. We will remand to the trial court with instructions that it allow plaintiff to introduce evidence pertaining to the amount of attorney’s fees incurred by it in enforcing payment under the Continuing Guaranty, and that it make a determination of the amount of said attorney’s fees based on the evidence presented.
DECREE
For the above and foregoing reasons, the judgment of the trial court denying plaintiff recovery of the amounts owed it by defendants as a result of the losses suffered by it on the Mott contract is reversed. The judgment of the trial court denying plaintiff attorney’s fees under the provisions of the Dealer Agreement is affirmed. The exceptions of no right of action and no cause of action, filed by Simon, are overruled.
Judgment is hereby rendered in favor of plaintiff and against defendants, jointly, severally, and in solido, in the sum of $9,844.57, on the Mott contract. The trial court’s judgment awarding plaintiff $6,328.28 for losses it suffered on the Me-nard contract is now final, making the total award to plaintiff the sum of $16,172.85, together with legal interest from date of judicial demand until paid.
We remand to the trial court for further proceedings relating to an award of attorney’s fees.
All costs of this appeal, and in the trial court, are assessed against defendants-ap-pellees.
REVERSED IN PART, AFFIRMED IN PART, RENDERED IN PART AND REMANDED WITH INSTRUCTIONS.

. There is no merit to Simon’s exception of no cause of action either. A review of the allegations of plaintiffs petition, in which all well-pleaded facts must be accepted as true and all doubts resolved in favor of sufficiency of the petition for purposes of the exception, reveals that it does state a cause of action against defendants under LSA-C.C. Article 1799.

. The Continuing Guaranty executed by Simon contains the following language: “... the Guarantors hereunder and each of them being bound to the payment of each and all indebtedness of said debtor (Kaplan) to said Finance Company whether now existing or hereafter accruing, as fully as if each indebtedness was directly owing to said Finance Company by him