LABORDE, Judge.
Plaintiff, James R. Davis, doing business as Davis Construction Co., filed suit against the Natchitoches Parish School Board (School Board) claiming that he was the low bidder on a School Board construction project, yet he was not awarded the contract for that project. He claimed that his lost profits should have been recoverable from the School Board. The School Board answered denying liability and claiming that plaintiff's damages were caused by his own fault. The School Board also filed a third party demand against the architect for the project, Jack B. Boydstun, claiming that he was also negligent and should be liable to the School Board for any amount of damages adjudged against it on the main demand. Boydstun then filed a cross-claim against the School Board asserting that he was damaged financially and professionally by the negligence or illegal acts or omissions by the School Board. After trial on the merits, the trial court found in favor of the School Board and against Davis. The court also denied the School Board’s third party demand against Jack Boydstun since the School Board was not found to be liable to Davis.[1] *626 Davis now appeals this judgment.[2] We reverse.
FACTS
In the latter part of 1984, the Natchitoch-es Parish School Board let out bids for the construction of a “career center” to be built in that parish. On October 10, 1984, the bids were opened and plaintiff’s company was the low bidder. The School Board, however, rejected that bid because it exceeded the total amount budgeted for the project. Then in December, 1984, the School Board sent out another invitation for bids on the project with the bid opening to be held on January 3, 1985. That bid opening had to be rescheduled for January 7, due to icy road conditions on January 3. On January 7 the bids were opened and the E.C. Breedlove Company (Breedlove) was the low bidder with a bid of $166,760.00. Plaintiff’s bid was $172,183.75. Plaintiff, however, learned of apparent discrepancies in the plans on which he based his bid and those used by the other bidders. Namely plaintiff included masonry costs in his bid, while the other bidders did not (their specifications indicated that masonry costs were to be included as an alternate bid). He claims that the masonry costs increased his bid by $19,380.00 and thus, if not included, his base bid would have been $152,803.75, i.e. he would have been the low bidder. Plaintiff told the architect who gave him the plans (Boydstun) of the discrepancies. Boydstun directed plaintiff to write him a letter voicing his grievances. Plaintiff wrote the letter. He also stated that he believed that Boydstun had supplied him with an erroneous set of plans for the project. Boydstun discussed the problem with School Board members and concluded that if there was any error it was made by Davis as all of the bidders had been given the same set of standards to follow. On February 7, 1985, the School Board sent a letter to Davis notifying him that the building contract had been awarded to Breed-love. Plaintiff did not seek to enjoin the procession of the project. Instead he waited until April 26, 1985 to take any action. On that date he filed the instant lawsuit claiming damages for lost profits on the project in the amount of $35,000.
PUBLIC CONTRACTS
LSA-R.S. 38:2211-2226 provides the procedure for letting out bids for public works contracts. The statute is prohibitory and is founded on public policy. Budd Construction Co. Inc. v. City of Alexandria, 401 So.2d 1070, 1077 (La.App. 3d Cir.), writ denied, 404 So.2d 1262 (La.1981). The statute was enacted in the interest of taxpaying citizens. Its purpose is to protect against contracts of public officials awarded through favoritism and possibly involving exorbitant and extortionate prices. Id.
“LSA-R.S. 38:2212 vests in the public agency awarding a public works contract the power, and discretion to determine the responsibility of the bidder and to reject all bids if none are satisfactory. However, the law does not permit the arbitrary selection of one which is higher and the rejection of others which are lower. The discretion must be exercised in a fair and legal manner and not arbitrarily.”
Budd Construction, 401 So.2d at 1077.
Louisiana jurisprudence interpreting the public works statute has established that a low bidder may sue on such a contract to set aside the award of the contract to another bidder and may enjoin the agency from the execution of the contract, where the agency has arbitrarily rejected the low bid. Haughton Elevator Division v. State, through Division of Administration, 367 So.2d 1161 (La.1979); Budd Construction, 401 So.2d at 1076. The Louisiana Supreme Court stated in dicta in Haughton Elevator that such a plaintiff may also arguably have a claim for damages for loss of profits. The court indicated that there may be a cause of action *627 against the state under LSA-C.C. art. 2315[3] or against the bidder who was awarded the contract under LSA-C.C. art. 2324.[4] See Haughton Elevator, 367 So.2d at 1169, footnotes 8 and 9.
In Millette Enterprises v. State, through Division of Administration, 417 So.2d 6 (La.App. 1st Cir.), writ denied, 417 So.2d 363 (La.1982), a low bidder’s claim against the state under Article 2315 was considered. That case involved bids to provide insurance claims processing services to the state. After the first set of bids were received it was determined that the plaintiff, Millette, was the low bidder; however, the State Board of Trustees decided to refuse those bids. A second bid invitation was issued with different qualifications for bidders. Millette was again the lowest bidder, but it was determined that Millette did not meet these new qualifications (a new requirement was that the bidders have experience with a self-insured benefits plan). The Board then awarded the contract to another bidder, CNA, which was the company that had previously provided the claims administration services. Millette then filed suit against the Board claiming, in essence, that the Board was determined to award the contract to CNA, the first bids were rejected because CNA was not the low bidder, and that the Board rewrote the specifications in an attempt to limit the probable bidders. The trial court sustained the Board’s exception of no cause of action. The First Circuit then reversed, holding that Millette did have a cause of action against the Board stating:
“If all the allegations of the petitions are proven, then by design and predetermination the Board has caused Millette to expend time, effort and money in preparing bids when there was never any chance of Millette being awarded the contract. If true and if proven, is this acting fairly and in the best interest of the public? We think not, and therefore hold that a cause of action has been stated.”
Id. at 10. The First Circuit recently reinforced that there is such a cause of action by the low bidder against a public body in Bristol Steel & Iron Works v. State, through Department of Transportation and Development, 504 So.2d 941 (La.App. 1st Cir.1987), and the Second Circuit also recognized such a cause of action in North Central Utilities v. Walker Community Water System, Inc., 437 So.2d 922 (La.App. 2d Cir.1983), appeal after remand, 506 So.2d 1325 (La.App. 2d Cir.1987).
The Louisiana Supreme Court has recently considered whether a plaintiff who claims to have actually been the low bidder has a cause of action against the bidder who gets the bid under Article 2324 in Alexander & Alexander v. State, Division of Administration, 486 So.2d 95 (La.1986). That case involved a dispute over the awarding of a state insurance contract. The plaintiff claimed that it was actually the lowest bidder and the state acted arbitrarily and capriciously in awarding the contract to another company. The narrow issue of the case was not, however, whether the plaintiff had a cause of action against the state, but rather whether there was a cause of action against the bidder who actually got the bid. The court said that bidders on public contracts owe no duty that may give rise to a cause of action under Article 2315. The only cause of action that an unsuccessful bidder may have against a successful bidder for damages is under Article 2324, where it is shown that the successful bidder assisted in or encouraged a wrongful act. This would involve a higher bidder who was wrongfully awarded a contract after participating with a governmental agency in the commission of a wrongful act. Id. at 99. The court held *628 that the plaintiff in Alexander & Alexander did not state a cause of action but remanded the case to the trial court to allow the plaintiff to amend its petition to properly state such a cause of action.
In the present case the trial court, in its reasons for judgment, found that differing sets of specifications were provided to the contractors. The court found that: “Circulating differing sets of specifications to the various qualified bidders violated the provisions of R.S. 38:2212 since all bids for any one letting must be made under identical specifications. The court then held, however, that the plaintiff did not seek its only proper remedy (an injunction) and did not have the remedy of seeking damages. We do not agree. As shown by the above review of jurisprudence, plaintiff had potential causes of action against the political body under Article 2315 and against the successful bidder, Breedlove, under Article 2324. Since plaintiff only filed suit against the School Board and not Breedlove, it is clear that his cause of action against the School Board would fall under Article 2315.
The trial court, as the finder of fact, has already determined that the School Board was negligent as it violated the provisions of R.S. 38:2212. We will not disturb that finding as it is not manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). From the record we are unable to make any factual determinations as to what degree of fault, if any, should be attributed to plaintiff. There is testimony that could be found by the trial court to indicate that plaintiff was also potentially negligent (for example, apparently, some of the other bidders told plaintiff that his specifications were erroneous, yet he chose to ignore this advice and did not investigate the discrepancies). We will thus remand this case to the trial court to make these factual determinations as well as to determine what damages, if any, are warranted.
Therefore, we reverse the trial court’s decision and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed to defendant, Natchi-toches Parish School Board.
REVERSED AND REMANDED.

. In its reasons for judgment, the trial court did not mention Boydstun’s cross-claim against the *626 School Board. Boydstun has not appealed that decision to this court nor has he addressed the cross-claim in his brief in this matter, thus we will not consider it.

. The record does not indicate that the School Board has perfected an appeal on its third party demand against Boydstun. Thus our decision today does not address that claim.

. LSA-C.C. Art. 2315 provides: (in pertinent part)
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.”

. LSA-C.C. Art. 2324 provides: (in pertinent part)
“He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damages caused by such act."