312 So.2d 154 (1975)
TIDE EQUIPMENT CO.
v.
POINTE COUPEE PARISH POLICE JURY.
No. 10208.
Court of Appeal of Louisiana, First Circuit.
March 10, 1975.
Rehearing Denied May 20, 1975.
Writ Refused June 30, 1975.
*155 James E. Toups, Jr., Baton Rouge, for appellant.
Sam Cashio, Maringouin, for appellee.
Before LOTTINGER, COVINGTON and BAILES, JJ.
COVINGTON, Judge:
On May 2, 1974, and again on the 9th and 16th of May, 1974, the defendant, Police Jury for the Parish of Pointe Coupee, placed an advertisement in the Pointe Coupee Banner, a local newspaper, for one new current heavy duty crawler-tractor, manufactured in the United States, to meet the specifications as set out in said advertisement. It stated that "the right to reject any and all bids and to waive informalities is reserved," and called for the receipt of sealed bids by June 11, 1974 at 1:30 p.m. On that date, but prior to 1:30 p.m., Tide Equipment Company, along with three other companies, submitted sealed bids in response to the advertisement. Tide Equipment's bid offered a new Komatsu Model D-65E tractor. On the evening of June 11, 1974, the four bids were opened and read out by the Police Jury who, thereafter, went into executive session to consider the bids; after meeting in closed session it came out and announced that it was accepting the bid of Patterson Redmond Equipment, Inc. for a new International TD-15C tractor, despite the fact that the bid of Tide Equipment Company was for several thousand dollars less than the bid accepted.
Patterson Redmond's invoice, in the amount of $58,170.00 was dated June 13, 1974, and was paid by the Police Jury with its check dated June 20, 1974; delivery of the equipment was made prior to the institution of this suit.
Tide Equipment Company (hereinafter called plaintiff) filed suit on June 22, 1974, to enjoin the Pointe Coupee Parish Police Jury (hereinafter called defendant) from executing a contract with Patterson Redmond Equipment Inc. (hereinafter called Patterson Redmond) for the purchase of the International TD-15C crawler-tractor pursuant to the bid of June 11, 1974, or, in the alternative, to enjoin the delivery, use of or payment for said tractor, in the event that a contract had already been signed. It further sought to have the acceptance of the bid of Patterson Redmond by the defendant declared illegal and thereby null and void and to have the plaintiff declared to be the lowest responsible bidder for the tractor advertised by the defendant.
The trial judge signed a temporary restraining order on June 24, 1974, enjoining the defendant from executing a contract for the aforesaid tractor and, in the alternative, from accepting delivery, using or paying for the tractor in the event that the contract had already been signed. This order was duly served on the defendant on the 25th day of June, 1974. The order was extended on July 3, 1974, and again on July 11, 1974, and service of these extensions were served on defendant. The matter came up for a hearing on a rule for a preliminary injunction on July 17, 1974. After hearing the evidence, the trial court entered a judgment denying the preliminary injunction and dissolving the temporary restraining order. From that ruling, the plaintiff has perfected this appeal.
The plaintiff urges upon us three specifications of error around which he argues for a reversal of the trial court's ruling. These specifications of error are:
1. The provision in the advertised specification calling for a tractor manufactured *156 in the United States rendered the bids null and void.
2. In the event the defendant could restrict the purchase to goods "manufactured in the United States," the defendant did not find that such requirement was advisable and in the public interest as outlined in R.S. 38:2211 Subsection F.
3. That the tractor accepted from Patterson Redmond did not meet the specifications called for by the defendant.
The first and second specifications of error can be joined, for to examine one must, of necessity, touch upon the other. In R.S. 38:2211, subd. A(1), as amended by Act 312 of 1974, reads as follows:
"All public work exceeding the sum of five thousand dollars including both labor and material to be done by the State of Louisiana, any public corporation or political subdivision of the state and all purchases of materials or supplies exceeding the sum of two thousand five hundred dollars to be paid out of public funds shall be advertised and let by contract to the lowest responsible bidder who has bid according to the contract, plans and specifications as advertised, and no such public work shall be done and no such purchase shall be made except as provided in this part."
Subsection A(3) states:
"The advertisement required by this section shall be published once a week for three different weeks in a newspaper in the locality, the first advertisement to appear at least fifteen days before the opening of bids; provided that when the advertisement is published in a daily newspaper in the locality, the advertisement shall be published three times within ten days, the first advertisement to appear at least ten days before the opening of bids."
And, Subsection F thereof provides:
"Where the governing authority deems it advisable and in the public interest to purchase machinery, equipment or vehicles of certain makes, kinds or types, the advertisement may specify the makes, kinds or types and, after the advertising, the governing authority may purchase those makes, kinds or types, but they shall not pay more than the standard market price for the machinery, equipment or vehicles."
At the hearing, in determining why plaintiff equipment was not accepted, Mr. Nobert Talbot testified as follows, Notes of Testimony pages 28 and 29:
"Q. Were you also present at the executive session of the Jury which considered these bids?
A. Yes.
Q. Could you tell us, please, why the low bid of Tide Equipment Company was rejected and the Police Jury accepted the bid of Patterson-Redmond Equipment, Inc.?
A. Well, we had advertised for an American made tractor. And the tractor that was proposed by Tide Equipment was a Japanese manufactured tractor. This is one of the prime reasonsof course, you understand, we keepusually the Jury will keep a tractor for fifteen years. We have some tractors that are fifteen years old. And we've got to dealWe did this in executive session because we don't want to hurt Tide Equipment or anybody. We felt that we would deal with people we hadwe don't say their tractor is not reliableknown and people that we knew would be in business fifteen years from now and would give us parts and service. We certainly would consider your equipment in the future, but it's a fairly new business; it's a *157 fairly new tractor. It's one that's manufactured in Japan. We felt it was in the best interest of the Parish that we would stay with the people that we had been dealing with for years.
Q. As far as you know, did the bid of Tide Equipment Company meet the specifications advertised in all other respects?
A. We didn't go into it that far. It was not an American made tractor so the bid was discarded. It wasn't considered."
The defendant had a committee of three members who served as the Equipment Committee. Mr. Adam Martin was chairman of the Equipment Committee, and when asked under cross examination, by the defendant, why the committee decided to specify that this be an American made tractor, he testified as follows, N.T. p. 41:
"A. Well, for the simple reason that I've been on the Jury for almost twenty years. And before that time I was a heavy-duty mechanic for about fifteen years before I ever joined the Jury. And in my time when I worked on heavy equipment, of course, I never worked on anything but American made equipment, which included International, Catepillar and Allis-Chalmers. That's all I ever worked on. But since I was on the Jury and we have had dealings with these people all along. And in my twenty years of service we have had International, we have had Catepillar, and we have had Allis-Chalmers on the Jury. And since my background is with mechanics, they chose me to be on the Equipment Committee and made me Chairman of the Equipment Committee, along with two other members of the Jury. And we felt it was in the best interest of Pointe Coupee to buy something made in America."
The Court, in T. L. James & Co. v. Jefferson Parish Council, 161 So.2d 597, 599-600 (La.App. 4th Cir. 1964) said:
"The law governing the acceptance of bids for public works, where the statute requires the award be made to the `lowest bidder,' is clearly stated in 43 American Jurisprudence, § 44, p. 786, verbo `Public Works and Contracts,' to the effect that, when the controlling statute or ordinance requires, without qualification the letting of a public contract to the lowest bidder, the duty of awarding the contract is generally held to be ministerial and not judicial, and the contract must be awarded to the bidder whose bid is actually the lowest in amount. Usually, however, the contract is not required to be awarded to the lowest bidder, without qualification, but to the `lowest responsible bidder,' or `lowest and best bidder.' There is but little dissent from the general rule that, in determining who is such `lowest responsible bidder,' or `lowest and best bidder,' public boards and officials are vested with wide discretion. Their decision, when based upon an honest exercise of the discretion thus vested in them, will not be interfered with by the courts, unless apparently arbitrary or capricious."
Also, see 64 Am.Jur.2d, Section 68, page 924, verbo "Public Works and Contracts" to the same effect and also that in exercising the "wide discretion", ". . . the choice must be reasonable, and not fraudulent or arbitrary."
The testimony outlined above, coupled with the language of R.S. 38:2211, subd. A(1) wherein it is stated that public contracts shall be let to the lowest responsible bidder who has bid according to the contract, plans and specifications as advertised, convinces us that the defendant was *158 within the limited range of discretion given them, in advertising for an American-made tractor and rejecting the bid submitted by the plaintiff. Likewise we accept, as true, the testimony of the Equipment Committee Chairman that the Jury deemed it advisable and in the public interest to purchase this specified equipment.
The final argument of plaintiff is that the tractor accepted from Patterson Redmond did not meet the specifications called for by the defendant, the import of that argument being that compliance with the specifications is required in order for the bid to be valid, and since the tractor received did not meet the specifications, the sale should be declared null and void. Where there is a substantial variance between a bid specification and a bid, the bid must be rejected. Toye Bros. Yellow Cab Co. v. City of New Orleans, 264 So.2d 768 (La.App. 4th Cir. 1972), writ refused 263 La. 102, 267 So.2d 210.
We turn again to the direct testimony of Mr. Adam Martin, the Chairman of the Equipment Committee, when he was asked if he received any assistance in drawing up these specifications and from whom, he testified thusly, N.T. pages 43 and 44:
"A. I was the Chairman of the Equipment Committee and we always seek assistance due to numerous things we have to write up. And I had Boyce to write up a set of specs. And I had Furlow-Laughlin to write up a set of specs. And I took the two sets of specs and we made one set out of them. And let me remind you that the specs that we write up, we consider them as a guideline. There is no Company that can bid according to the specs that we write if we wanted to hold them to that particular specification. Now, if we wrote specifications for one tractor and stuck to those specifications, no other tractor could bid on them."
L.S.A.-R.S. 38:2290, Subd. B. provides:
"Under no circumstances shall a closed specification be submitted, or authorized, where any person or group of persons possess the right to exclusive distribution of the specified product."
The facts and circumstances herein convinces us that no company could comply with all the specifications as advertised by defendant, but that Patterson Redmond had substantially complied; at least the Jury thought so. The Jury has the right to be wrong, dead wrong; but not unfairly, arbitrary wrong; Toye Bros. Yellow Cab Co. v. City of New Orleans, supra.
Parenthetically, relative to the appellant's prayer that the defendant be directed to accept its bid and to enter into a contract with it for the purchase of the appellant's tractor, our Supreme Court dealt with that matter in the case of Bartley, Inc., v. Town of Westlake, 237 La. 413, 111 So.2d 328 (1959). Although it ruled that the award by the municipality was illegal, it denied such relief to the apparently low bidder on the basis that, since the public body reserved the right to reject any and all bids, the court could not know that the town would have accepted the plaintiff's bid even if it had not accepted the bid which was ultimately adjudicated to be illegal. Therefore, in the instant case, the courts could not grant such relief, even if it was found that the defendant Jury acted in bad faith, unfairly and arbitrarily.
For the reasons herein discussed, the ruling of the trial court is affirmed, plaintiff-appellant to pay all cost of this Court.
Affirmed.