493 So.2d 178 (1986)
PITTMAN CONSTRUCTION COMPANY, INC.,
v.
PARISH OF EAST BATON ROUGE; City of Baton Rouge; the Metropolitan Council of the Parish of East Baton Rouge and City of Baton Rouge; Mayor President Pat Screen, et al.
No. CA860599.
Court of Appeal of Louisiana, First Circuit.
July 7, 1986.
Writ Denied September 8, 1986.
*179 W.P. Wray, Jr., Jay J. Szuba, Baton Rouge, for plaintiff-appellee Pittman Const. Co., Inc.
Ashton L. Stewart, and Allen R. Boudreaux, Baton Rouge, for defendant-appellant Boh Bros. Const. Co., Inc.
William T. Lowery, Asst. Parish Atty., Baton Rouge, for defendant-appellant Parish of East Baton Rouge, City of Baton Rouge, The Metropolitan Council of the Parish of East Baton Rouge, Mayor-President Pat Screen, President Pro-Tem. Michael G. Roubique, Larry S. Bankston, Gary J. Bergeron, David C. Braud, V.M. Corsentino, Gordon W. Curry, Jr., Pearl George, Melvin Lee Holden, Lynda L. Imes, Thomas E. McHuc, Ben H. Peabody, Jr., and Douglas Welborn.
Gerald J. Gallinghouse, New Orleans, and Steve Marks, Baton Rouge, for plaintiff-appellee Pittman Const. Co., Inc.
Before LOTTINGER, CARTER and LANIER, JJ.
*180 PER CURIAM.
This is an appeal by defendants-appellants contesting the decision by the trial court declaring null and void the award of a public improvements contract by the Parish of East Baton Rouge and the City of Baton Rouge (City-Parish) to defendant, Boh Bros. Construction Co., Inc. (Boh Bros.), permanently enjoining work under said contract and mandamusing the City-Parish to execute a contract with plaintiff, Pittman Construction Co., Inc. (Pittman). The trial court allowed suspensive appeals by all defendants only as to that portion of the trial court judgment ordering the execution and signing of a contract with Pittman. In all other respects, the trial court allowed only a devolutive appeal. Prior to the submission of this appeal in this court, plaintiff-appellee filed a motion to dismiss the suspensive appeal of Boh Bros. for failure to timely file a suspensive appeal bond.

ASSIGNMENTS OF ERROR
In appealing, the defendants-appellants contend the trial court erred:
1. In holding that the City-Parish Council's interpretation of the "contract, plans and specifications as advertised" was arbitrary, capricious and unreasonable in its interpretation that each bidder was required to name the pre-qualified system vendors in its bid proposal (Bid Form) on bid date;
2. In holding that Pittman's failure (refusal) to name the pre-qualified system vendors in the Bid Form on bid date did not give Pittman the possibility of an unfair advantage over the other bidders, and was, therefore, both a material and substantial irregularity, which required its rejection under the Public Works Bid Statute;
3. In not holding that the failure of Pittman to write out the price of each item in the Schedule of its bid proposal in words and figures as required by the contract documents, disqualified its bid for consideration as provided in the contract documents;
4. In holding that the bid of Boh Bros. was irregular by imposing a hypertechnical construction on the "contract, plans and specifications as advertised"; and
5. In refusing to use the standard of review required by the Constitution and jurisprudence relative to the review of a legislative body, that is, such review is limited to whether the legislative body acted arbitrarily, capriciously, or unreasonably.
After a thorough and complete review of the entire record in this matter, and under the facts found and reasons assigned by the trial judge in his excellent reasons for judgment, a copy of which is attached hereto, we are convinced the trial judge reached the correct result.

I
This court is convinced that inasmuch as the "Equipment Questionnaire" included the three "Pre-Qualified System Vendors," and that the addenda amending the "Specifications and Contract Documents" took "precedence over any conflicting part of the original Contract Documents," that any requirement to submit the names of the "Pre-Qualified System Vendors" at the same time as submitting the bid was effectively changed to a submission date later than that of the bid submission.
Appellants argument that the addenda in question only made reference to a specific section is invalid in light of the express language in the addenda that the change took "precedence over any conflicting part of the original Contract Document." Absent the fact that the "Pre-Qualified System Vendors" are also included in the "Equipment Questionnaire," appellants argument may have merit.

II
Appellants argue that plaintiff-appellee received an "unfair advantage" over other bidders by not submitting the names of its proposed "Pre-Qualified System Vendors" in the bid form on bid date.
*181 The "unfair advantage" concept as argued by defendants-appellants is that which allows a successful bidder to re-negotiate a new and lower price with subcontractors. The theory is that subcontractors would be willing to re-negotiate a new and lower price because of the certainty of getting the job inasmuch as the general contractor was the successful bidder. By re-negotiation the general contractor can better his margin of profit, and this gives him an "unfair advantage."
Our research has failed to discover any statutory or jurisprudential rule in this state requiring that bidders on public works contracts list their subcontractors in their bids. Appellants cite several cases upholding such a rule, but they are from other states. In the absence of legislation expressing the need for such a rule, we decline to establish one, leaving the establishment of such a rule to the legislature. Additionally, we are convinced that the evidence in this case does not support the allegation that plaintiff obtained an "unfair advantage."

III
As to assignment of error number three, we agree with the trial judge that the failure to "write out the price" was a matter of form and not one of substance. Thus this assignment of error has no merit.

IV
Inasmuch as we agree with the trial judge in his assessment of the rejection of plaintiff's bid because of the failure to list the "Pre-Qualified System Vendors" in the bid documents submitted on bidding date, and the failure to "write out the price" of a particular item, we pretermit any discussion of this assignment of error.

V
As to assignment of error number five, we are of the opinion that when a legislative body awards a contract on a public works job, it is acting in an executive rather than a legislative capacity. Thus the discretion afforded legislative bodies in the performance of purely legislative functions is not available. Additionally, the defects found in plaintiff's bid as justification for rejection of the low bid were not sufficient as a matter of law. Therefore, the action of the Parish Council was illegal.
Thus this assignment of error is without merit.

SUSPENSIVE APPEAL
Plaintiff-appellee has moved to dismiss the suspensive appeal of the defendant-appellant Boh Bros. for failure to timely file an appeal bond. La.Code Civ.P. arts. 2123 and 2124. Boh Bros. filed the motion for the appeal timely but failed to file the appeal bond. The fact that the other defendant, the City-Parish, is exempt from filing an appeal bond does not relieve Boh Bros. of its obligation. Thus the suspensive appeal of Boh Bros. must be dismissed, however, their appeal will continue as a devolutive appeal.

DECREE
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed; the suspensive appeal of Boh Bros. Construction Co., Inc. is dismissed; and all costs of this proceeding are assessed against defendants-appellants equally. The amount of costs taxed against the Parish of East Baton Rouge and City of Baton Rouge is in the amount of $7,852.07.
SUSPENSIVE APPEAL OF BOH BROS. CONSTRUCTION CO., INC. DISMISSED.
AFFIRMED.

APPENDIX

WRITTEN REASONS
On October 17, 1985, the City of Baton Rouge and Parish of East Baton Rouge (City-Parish) received bids for a public works project designated as "The Rehabilitation and Upgrade of the South Wastewater Treatment Plant" (the "Project") pursuant to the plans, specifications and contract *182 documents prepared by City-Parish consultants, Professional Engineering Consultants Corporation (P.E.C.C.)[1] Three bids were received, tabulated and recorded by the City-Parish and P.E.C.C.[2] as follows:

1. Pittman Construction
 Company, Inc. ("Pittman") ... $28,263,974.30
2. Boh Bros. Construction Co.,
 Inc. ("Boh") ................ $28,309,430.10
3. Atlas Construction Company,
 Inc./Cajun Contractors, Inc.,
 A Joint Venture
 ("Atlas/Cajun").............. $32,389,742.00

Pittman was the apparent low bidder. Its proposal was reviewed and evaluated by the City-Parish and P.E.C.C. for recommendation to the City-Parish Council (Council) for award of the contract for the Project.[3] Boh, the second low bidder, and proposed subcontractors of Boh (for simplicity referred to herein as "the M.M.R. Group") made complaints of "irregularities" in the Pittman bid to the City-Parish and sought both the rejection of Pittman's bid and the award of the contract to Boh.[4]
On November 20, 1985, the Council accepted the Boh bid and awarded the contract for the Project to Boh.[5] The Boh bid was $45,435.80 higher than the Pittman bid.
Pittman filed this suit for annulment of the contract awarded to Boh, seeking also injunctive relief and mandamus. Trial was had on the merits for the permanent relief sought, and the case was submitted for decision.
There is no issue here concerning the applicability of the Public Bid Law (LSA-R.S. 38:2211 et seq.). Its provisions govern the determination of and award of the contract to the "lowest responsible bidder who bid according to the contract, plans and specifications, as advertised." No other bidder may be awarded the contract or perform the work. (LSA-R.S. 38:2211, et seq.)
Boh and the City-Parish assert that the Pittman bid is deficient in the following respects:
1. Pittman did not write "in words" its proposal for bid Item No. 1 on the form supplied by the City-Parish;
2. Pittman did not furnish the names of the Pre-Qualified System Vendors it proposed to use on October 17, 1985; and,
3. Pittman did not furnish a Compliance Report from an Engine Generator System Supplier on October 17, 1985.
Each of the foregoing will be addressed separately below.

1. THE PRICE "IN WORDS"
Pittman did not write out "in words" the amount of its proposal for Item No. 1 of the Schedule of Items.[6] Instead, Pittman inserted the words "Lump Sum" and wrote out, in numerals, the price proposed for the work. Pittman completed the item as follows:
at Lump Sum dollars
and__________________cents Lump Sum $27,014,325.00
 per lump sum.
The Item provided for a lump sum proposal, and was not an item for "which a quantity was given".[7] A sample copy demonstrating completion of a lump sum proposal appears at Page 0600-2 of Joint Exhibit 1. The sample copy illustrates how to complete the Schedule items in the different circumstances shown therein.
Jimmy Kilshaw, the City-Parish Purchasing Agent, testified that each of the bids received for the Project contained deviations from those instructions for the completion of the bid form for Item No. 1.[8] All of the bidders submitted bid proposals that *183 were less than perfect in compliance with the stated manner of completion of the bid items. The price written by Pittman for bid Item No. 1 in numbers is clear, definite and certain in amount. The Court finds that Pittman's execution of the bid form, while not in perfect conformity with the sample instructions did not give rise to ambiguity, doubt or conflict as to the price proposed. Pittman was bound by the price offered, and Pittman's proposal was subject to simple acceptance by the City-Parish. As to bid Item No. 1, the Pittman bid substantially complies with the contract, plans, and specifications as advertised. See, e.g. Tide Equipment Co. v. Pointe Coupee Parish Police Jury, 312 So.2d 154 (La.App. 1st Cir., 1975).
The defendants contend that City-Parish Ordinance 1:705 and Sections 11.11 and 11.02 of the General Conditions of the contract documents[9] required Pittman to write out "in words" the price proposed for Item No. 1 and that in the failure thereof, the Purchasing Agent was required to mark the bid "irregular," and return it to Pittman. Neither the Ordinance nor the General Conditions provide instructions to bidders for completion of lump sum items. The Ordinance and General Conditions refer to completion of items "for which a quantity is given" and govern only those items, not lump sum items. These provisions do not require or authorize the Purchasing Agent to mark a bid irregular because of a deviation in completing a proposal for a lump sum item, and the Court finds no authority or provision for doing so in the General or Special Conditions of the contract and bidding documents relative to lump sum items.
Reference to City-Parish Ordinance 1:705(a)(4) does provide assistance in resolution of this matter in that the Ordinance provides, in part:
"Should the written unit price be illegible, the unit price in figures shall govern."
The premise underlying this provision is that where the unit price written in figures is clear, definite and certain, it is subject to acceptance by the City-Parish even when the unit price written in words is illegible. The premise of 1:705(a)(4) is legally sound and in the public interest, and should apply, at least by analogy, to the Pittman bid.
Pittman's writing "lump sum" is, in effect, no different than writing the price in words illegibly, and the result should be the sameas long as there is a clear and certain price written in figures, the bid is subject to acceptance by the City Parish.
A bidder's deviation from the bidding instructions by failing to write the price for Item No. 1 in words and numbers is not, therefore, a matter of substance, but one only of form, and the Pittman bid should not be subject to rejection on that account.
The record reveals that the City-Parish has, by its actions, considered formal deviations similar to those at issue here to be of such significance as to be the proper subject of waiver. The record shows that the City-Parish waived deviations from the provisions of City-Parish Ordinance 1:705 (which requires writing out the price "in words" for certain bid items) in numerous cases predating November 20, 1985 and thereafter. Mr. Kilshaw identified ten (10) cases in which such "irregularities" had occurred in bidding and for which waivers were granted by the Council.[10] Members of the Council testified such a waiver was inappropriate in this case because the previous waivers had been for small contractors, minority contractors and/or inexperienced contractors. The members of the Council who testified on the subject expressed an unwillingness to apply waivers for the benefit of a large and experienced contractor bidding on a large project. The evidence revealed, however, that the Council had waived a deviation from the requirements of the Ordinance on a project involving *184 in excess of Two Million ($2,000,000.00) Dollars, namely The Capital Lake Project.[11]
The Ordinance, 1:705, affords the City-Parish no basis to "pick and choose" bidders for whom it will afford the benefit of waiver of variations contained within bid proposals. It is of the essence of arbitrary and capricious conduct for the City-Parish or its Council to subjectively choose which bidders will be afforded the benefit of waiver and which will not. Sullivan v. City of Baton Rouge, 345 So.2d 912 (La. App. 5th Cir.1976); Haughton Elevator v. State Division of Administration, 367 So.2d 1161, 1164 (La.1979); Budd Construction Company, Inc. v. City of Alexandria, 401 So.2d 1070 (La.App. 3rd Cir. 1981). The City-Parish was bound to apply its rules, policies and practices regarding waivers uniformly and equally to all bidders. The Council was not uniform, evenhanded or fair in refusing to waive a deviation in the Pittman bid when it had done so numerous times in the past. Rejection of the Pittman bid, for that reason, was not justified under law.
In Sullivan v. City of Baton Rouge, supra, the First Circuit decreed that the Public Bid Law forbids the rejection of bids for matters of form and held that a variation of substance must exist in the bid, whether by specification, bid procedure or otherwise, as a predicate for the rejection of a bid. Pittman's method of completing Item No. 1 of the bid form does not represent a deviation or variation of substance, but instead is strictly one of form. The item was not ambiguous or unclear, nor did it create an advantage or disadvantage to any bidder. The Ordinance, insofar as it would cause the rejection of the Pittman bid on account thereof would be a prohibited rejection of a low bid based strictly on a matter of form. Sullivan, supra. Because of the strong public policy underpinnings of the Public Bid Law, its policies must prevail. The rejection of the Pittman bid would be unjustified under the ordinance insofar as such rejection would be in violation of the Public Bid Law. Sullivan v. City of Baton Rouge, supra.

2. PRE-QUALIFIED SYSTEM VENDORS; ENGINE GENERATOR SYSTEM SUPPLIER'S COMPLIANCE REPORT
The plans, specifications, and contract documents, as advertised, required bidders to complete the bid forms furnished by the City Parish, including forms concerning the subcontractors and major equipment manufacturers by the bidders. These bid forms provide that three certain "vendors" of equipment were to be listed on a form for major equipment manufacturers [12] and on Page 00200-2 of the Bid Form.[13] These suppliers or vendors of equipment are otherwise referred to in the bidding documents as "Pre-Qualified System Vendors." The bid documents also provide that the supplier of generation equipment, called the "Engine Generator System Supplier", was to provide a Compliance Report on its letterhead, which would be supplied "for inclusion with the contractor's bid proposal package." The bidder was to obtain the report from the Engine Generator System Supplier, and supply it to the City-Parish when submitting information relative to other machinery and equipment to be supplied on the Equipment Questionnaire (Section 00720) form.
The Pre-Qualified System Vendors were those vendors, manufacturers, or suppliers of equipment who, in accordance with the procedures established and contained within the documents, were to be approved by the engineer in advance of the bidding. These equipment suppliers were required to submit unpriced technical proposals concerning their equipment to the engineers for approval. A team of engineers, including employees of the City-Parish and P.E. C.C., would consider the information submitted and approve the equipment described by the proposals. After approval of the equipment, the vendors of the approved *185 equipment would be "The Pre-Qualified System Vendors". Only equipment supplied by "Pre-Qualified System Vendors" could be used in the Project. After the prequalification of the equipment, the City-Parish communicated the names and addresses of all prequalified system vendors for the three equipment systems to the bidders by Addendum No. 2.
As originally advertised, all forms and all information were required to be submitted by the bidders on the date of bid opening. During the month of September, 1985, at the request of the bidders, P.E.C.C. decided to allow the bidders to submit the forms concerning proposed subcontractors and equipment suppliers five days after the date of bid opening and issued Addendum No. 1 to that effect. The City-Parish forms supplied to identify equipment manufacturers (Section 00720) and subcontractors (Section 00710) each contained the following language:
"It is a part of the bidder's proposal and shall be treated as such. Information provided will be used in awarding the contract." [14]
The testimony of Jerome Klier, a City-Parish engineer, and other engineering witnesses convinced this Court that both the Equipment Questionnaire (Section 00720) and the Subcontractor List (Section 00710) were to be a part of the bid. The issuance of Addendum No. 4, among other things, directed the three low bidders to furnish information concerning subcontractors and equipment suppliers which they proposed to use within five (5) days after the date of bid opening, namely on or before October 22, 1985. Thus, Addendum No. 1 and Addendum No. 4 permitted a five-day delay in the submittal of information regarding subcontractors and equipment suppliers, and in effect, extended the bidding process for the five-day period.
Pittman, as required, submitted to the City-Parish its proposed Subcontractor List (Section 00710 form) and Equipment Questionnaire (Section 00710 form), which included the three Pre-Qualified System Vendors and the Engine Generator System Supplier Compliance Report from its proposed Engine Generator System Supplier on October 22, 1985. Boh submitted its proposed Pre-Qualified System Vendors and its Engine Generator System Supplier's "Compliance Report" on October 17, 1985, and supplied its Section 00710 and Section 00720 forms on October 22, 1985.
Boh and the City-Parish argue that Pittman's failure to name or list the Pre-Qualified System Vendors that it proposed to use or to submit its Engine Generator System Supplier's Compliance Report on October 17, 1985, was a deviation from the bidding instructions, contract documents and specifications, and that the same rendered the Pittman bid non-responsive and subject to rejection.
At issue is the interpretation of the addenda which delayed the submittal of Section 00710 and Section 00720 forms. Each of the addenda issued by the City-Parish provided the following language:
"The following revisions shall be incorporated in and take precedence over any conflicting part of the original contract documents."
Albert E. Pittman and Charles Pittman, principals of the Pittman corporation, testified that they understood the recited language to mean that the Pre-Qualified System Vendors and the Engine Generator System Supplier's Compliance Report could be submitted with the Section 00720 form on or before October 22, 1985. They testified that they believed Addendum No. 1 and Addendum No. 4 created a conflict as to the dates of submittal of the names of proposed Pre-Qualified System Vendors, and that the date provided by the addenda took precedence over the contract documents by operation of the above cited language.
The testimony of the President of Professional Engineering Consultants Corporation, Larry A. McKee, and an employee thereof, William Gagnon (who drafted Addendum No. 1 and Addendum No. 4) revealed that Mr. McKee, after consultation *186 with an associate and consultant, Mr. Ashok Varma, decided to allow a five-day delay in submittal of the required information about subcontractors and equipment suppliers. Mr. McKee testified that he advised Mr. Gagnon to draft an addendum providing for the five-day delay. Mr. McKee and Mr. Gagnon testified that they did not distinguish and discuss the Pre-Qualified System Vendors or the Engine Generator Supplier's Compliance Report at that time. Messrs. McKee, Gagnon, Varma, and other engineering witnesses who testified, used the term "vendors", "suppliers", and "manufacturers" as one and the same. The contract and bidding documents similarly use the words "suppliers", "manufacturers", and "vendors" interchangeably. Mr. Gagnon, when drafting the addenda did not make mention of or reference to the Pre-Qualified System Vendors or Engine Generator Supplier's Compliance Report. Mr. Gagnon testified that he was vehemently opposed to any delay for submission of the Pre-Qualified System Vendors and Engine Generator System Supplier's Compliance Report by the bidders, but that he did not discuss his opposition with anyone. He did not tell Mr. McKee or any of his co-workers that he desired to exclude the Pre-Qualified System Vendors or the Engine Generator System Supplier's Compliance Report from the five-day delay provided by Addendum No. 1 and Addendum No. 4. He testified that although he made sure that they were not included in the delay, he did not change the Section 00720 form or Page 00200-2 on the original bid form to delete from it the Pre-Qualified System Vendors listing, nor did he provide any language to reconcile the conflict created by the issuance of Addenda Nos. 1 and 4.
There is nothing within the addenda to reflect Mr. Gagnon's claimed intention to exclude the Pre-Qualified System Vendors and Engine Generator System Supplier's Compliance Report from the delay thereby provided, nor to alert bidders that he had any mental reservation and resentment against including them in the five-day delay provided.
This Court is persuaded by the testimony of Mr. McKee and Mr. Gagnon that neither of them gave consideration to the Pre-Qualified System Vendors or the Compliance Report of the Engine Generator System Supplier or the effect that the delay in submission of that information might have when drafting Addendum No. 4. Their testimony has persuaded this Court that they did not think about the Pre-Qualified System Vendors or the Compliance Report at the time the addenda were drafted or issued.
Mr. McKee acknowledged that at the time the addenda were drafted he did not know of the requirement that bidders submit the Engine Generator System Supplier Compliance Report. Mr. McKee further acknowledged that the bidding documents would have been clarified if Mr. Gagnon's claimed intent to exclude Pre-Qualified Systems Vendors and Engine Generator System Vendors Report had been reflected on the language of the Addenda. Jerome Klier, who worked on the plans and specifications for the Project, agreed. In a letter dated September 16, 1985, written to Walter Monsour,[15] Mr. McKee claimed that he meant to explain that there was no change in the date for submittal of the Pre-Qualified System Vendors. His testimony was not credible, however, inasmuch as he acknowledged there was no discussion of excluding Pre-Qualified System Vendors from the delay, and he was unaware of the requirement for submission of the Engine Generator Compliance Report. Further, Mr. Gagnon testified that he telephoned the bidders on or about October 14 and 15, 1985 to remind them to include the names of Pre-Qualified System Vendors in the bid form on October 17, 1985. He testified that this was the only "reminder" he made telephonically and that he was neither authorized nor instructed to do so by Mr. McKee. Mr. Gagnon testified that he did not inform Mr. McKee that he was going to call the bidders before he made the calls. *187 Mr. Gagnon testified that he made the calls because he wanted the bidders to include the Pre-Qualified System Vendors in their submittals of October 17, 1985. The Court believes that if the addenda drafted by Mr. Gagnon had, in fact, excluded the Pre-Qualified System Vendors and the Engine Generator Compliance Report from the delay, there would have been no need for him to make the telephone calls. Mr. Gagnon did not explain why he did not remind the bidders to also submit the Engine Generator System Supplier Compliance Report when submitting their bid proposals. Both of which, he testified, were clearly required. That Mr. Gagnon believed it necessary to make telephone calls to the bidders persuades this Court to believe that Mr. Gagnon was aware that the addenda did not require the submittal of Pre-Qualified System Vendors or the Engine Generator System Supplier Compliance Report by bidders on October 17, 1985.
The testimony of Mr. McKee, Lynn Williams (the Parish Attorney), and Jimmy Kilshaw (the Purchasing Agent), at the Council meeting on November 20, 1985,[16] supported the interpretation placed on the addenda by Pittman. Messrs. McKee, Williams, and Kilshaw testified that the addenda did not require submittal of the Pre-Qualified System Vendors on October 17, 1985; and that the addenda were subject to more than one reasonable interpretation. The testimony of Albert Pittman and Charles Pittman was uncontradicted and was supported by the evidence and testimony. Accordingly, the Court finds that the Pre-Qualified System Vendors and the Engine Generator System Supplier's Compliance Report could have been supplied by the bidders on either October 17, 1985, on October 22, 1985, or on any day between those dates and that such would have complied with the contract, plans, and specifications as advertised and as amended by the addenda.
The defendants argue that the disparity of dates of submittal of the names of Pre-Qualified System Vendors and the Engine Generator System Supplier Compliance Report caused Boh to be disadvantaged, caused Pittman to have an advantage, and created the potential for harm to the competitive bidding process.
Boh argues that Pittman had the opportunity to shop bids during the five (5) days between October 17 and October 22, while Boh did not similarly enjoy that opportunity and, for that reason, Pittman's bid was properly rejected and the contract awarded to Boh. Further Boh argues that Boh was restrained in changing the Pre-Qualified System Vendors that it had listed, whereas Pittman was not so restrained, and that such is an additional basis for the rejection of the Pittman bid. The City-Parish argues that the potential for bid shopping and restraints placed on Boh, who listed its Pre-Qualified System Vendors on October 17, 1985, were not placed on Pittman, and constitutes cause for the City-Parish to reject the Pittman bid.
The evidence presented in support of these contentions was neither credible nor persuasive. None of the witnesses offered any credible reason or purpose served by the City-Parish's receiving information concerning the Pre-Qualified System Vendors or the Engine Generator System Supplier's Compliance Report five (5) days earlier than information concerning other (non-prequalified) equipment suppliers. The Pre-Qualified System Vendors were pre-approved and the five (5) days were not needed to evaluate the equipment. The cases from other states, cited by defendants are, therefore, factually inapplicable herein.
The testimony of the defendant's expert, Mr. Ashok Varma, that bidders shopping bid prices among the Pre-Qualified System Vendors could affect quality of the equipment to be supplied appears to be a premise not supported by the evidence nor by logic. Prequalification was granted on the basis of an unpriced technical proposal. The prequalification had nothing to do with the price of the equipment. Mr. Varma and other engineering witnesses testified that the motivation for suppliers to lessen *188 quality always exists. Mr. Varma admitted that the engineers are bound to inspect the equipment installed in the Project and to ensure that only quality, prequalified equipment complying with specifications was used in the project.
The alleged potential for harm to the competitive bidding system in public works construction was not demonstrated. That Pittman interpreted the bidding documents to permit submission of the Pre-Qualified System Vendors and the Engine Generator System Supplier Compliance Report at different times than Boh does not create the potential for harm to the competitive bidding process, nor does it discourage bidders from engaging in competitive bidding in the future. There was no contrary proof produced. This Court believes that rejection of the Pittman bid here would serve only to foster potential for abuse of the competitive bidding system by encouraging bidders to contest low bids for minor, technical reasons, and based on phantom claims of "advantage."
The contentions of defendants that bid shopping provided Pittman with an advantage over Boh in the bidding process was clearly not supported by the evidence. Indeed, the evidence is to the contrary. Mr. Robert Boh, the Chief Executive Officer of Boh Bros., testified that Boh does not engage in bid shopping. Messrs. Albert and Charles Pittman testified that Pittman does not engage in bid shopping, and the record is devoid of any evidence that Pittman engaged in bid shopping at any time, including the period October 17, 1985 through October 22, 1985.
Mr. Boh further testified that the amount of the Boh bid would have been the same whether the Pre-Qualified System Vendors were listed or not listed in the Boh proposal on October 17, 1985. Mr. Boh further testified that there is no advantage to bid shopping in competitive bidding. Mr. Boh and Mr. Varma testified that the suppliers know which contractors are "bid shoppers" and will not give the lowest price to contractors known to be bid shoppers whereas they will give the lowest prices to bidders who do not bid shop. Thus, the evidence reflects that there was no actual prejudice to Boh and no advantage to Pittman by virtue of Pittman supplying its Pre-Qualified System Vendors and Engine Generator System Supplier Compliance Report five (5) days after the bid opening. The evidence shows that the listing of or failure to list Pre-Qualified System Vendors on October 17, 1985, did not affect the competitive bidding process.
The argument that, by listing its Pre-Qualified System Vendors on October 17, Boh was restrained in changing its Pre-Qualified System Vendor during the five-day delay is supposition not supported by the record. There was no evidence offered that Boh either desired or needed to make any change in the Pre-Qualified System Vendors between October 17, 1985 and October 22, 1985. The evidence, moreover, showed that Boh had no contract with any of the Pre-Qualified System Vendors.
The evidence shows that Boh was allowed to change the subcontractors that Boh had listed on October 22, 1985 and changed one of the subcontractors who had contracted with the Pre-Qualified System Vendors. Boh made the change because it had mistakenly listed the wrong subcontractor. The evidence shows that Boh could, and did, change subcontractors, and this Court is convinced that Boh could have also changed its Pre-Qualified System Vendors.
The credible evidence presented herein does not support actual or potential prejudice, preference, favoritism, fraud or harm to the bidders or to competitive bidding in public works by Pittman's submittal of the Pre-Qualified System Vendors and the Compliance Report five (5) days later than Boh. This Court finds none to exist and concludes that Pittman's bid was not subject to rejection on that account.

THE BOH BID
The bid of Boh was shown to contain numerous deficiencies, deviations and defects. The Boh bid shows, and the testimony *189 confirmed, (1) that Boh, like Pittman, failed to complete Item No. 1 of the Schedule of Items[17] as required by the sample copy appearing on Page 00600-2 of the bidding documents;[18] (2) Boh wrote out 5% in numerals and failed to write out "five percent" in words as is apparently required for the bid bond amount;[19] (3) Boh changed one of the Pre-Qualified System Vendors to "A.S.H." and the change was initialed by a person not authorized to sign the bid for Boh;[20] (4) the Contractors Qualification Affidavit at Page 00700-3 of Exhibit 1 was not completed as required; (5) the list of subcontractors[21] was not signed by Robert H. Boh as it purports to be, but was signed by an employee of Boh who was not authorized to sign the bid; and (6) Boh listed an unlicensed subcontractor.
These variances are greater in number than the variances of the Pittman bid and, as Jimmy Kilshaw testified, some are serious and substantial. Those variances were brought to the attention of the City-Parish by Pittman, but only one of them was discussed during the November 20, 1985 Council meeting.[22] "The one defect in the Boh bid that was discussed by the Council was that Boh had listed an unlicensed subcontractor on its bid. This error was noted and disposed of by the Council as being something the Council need not concern itself with."[23]
Pittman sought review of the variances in Boh's bid prior to the November 20, 1985 meeting, but for undisclosed reasons, was not successful. The office of City-Parish attorney was involved in reviewing and evaluating Pittman's and Boh's complaints against the bid of the other. The attorney or attorneys who studied the complaints of Boh and Pittman were not called to testify, but Mr. Lynn Williams testified that, although he did not personally study the complaints of Pittman regarding variances in the Boh bid, the complaints were not considered to be valid or substantial. Mr. Williams produced no evidence or documents to explain the basis of the disposition of Pittman's complaints against Boh's bid. Mr. Williams did not examine the Boh bid for variances or deviations and did not testify that it was so examined by his office. Mr. McKee testified that he did not review the Boh bid for defects. The Purchasing Agent, Mr. Kilshaw, did not examine the Boh bid relative to the deficiencies pointed out by Pittman.
Pittman sent letters to the Council members concerning the Boh bid. The Council members testified that they either did not read the letters or did not remember their contents and that they relied on the City-Parish staff to examine all bids and to report on them when necessary. The City-Parish staff did not make reports to the council concerning the Boh Bid.
As a consequence, the Council was unaware that the Boh bid also contained variances, defects and deficiencies which were greater in number and significance than those contained within the Pittman bid. The Council did not consider Boh's compliance with the plans and specifications before awarding the contract to Boh.
The Council was obliged by the Public Works Law to treat the bids of Boh and Pittman uniformly, equally and apply its rules, procedures and determinations with an even and fair hand.
Public officials and their representatives are not entitled to select the contractors of their own choosing on public works projects. The public interest is served when public funds are spent for public works built strictly in accordance with the Public Bid Law. A public entity cannot disregard the provisions of the Public Bid Law, for by such disregard of the law, the prohibitions, purposes and policy interests *190 that the Public Bid Law was enacted to protect are disserved. Any contract made in violation of the Public Bid Law is, therefore, absolutely null and void. Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943); St. Landry Lumber Co. v. Mayor and Board of Aldermen, 155 La. 892, 99 So. 687 (1924); Smith v. Town of Vinton, 216 La. 9, 43 So.2d 18 (1949); LSA-R.S. 38:2220 A. A low bidder may sue to set aside the award of the contract to another bidder, may enjoin the agency from execution of the contract, and may be awarded the contract for the work. LSA-R.S. 38:2220 B; Haughton Elevator Division v. State of Louisiana through the Division of Administration, 367 So.2d 1161 (La.1979); and Gurtler, Hebert & Company v. Orleans Parish School Board, 251 So.2d 51 (La.App. 4th Cir.1971).
Thus, a major goal or policy of the Public Bid Law, LSA-R.S. 38:2211 et seq., "is to foster fair competition and the prevention of favoritism in letting public works contracts." Grace Construction Company v. St. Charles Parish, 467 So.2d 1371 (La. App. 5th Cir.1985). See also Budd, supra, and Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943).
If Boh's bid variances were to be waived, overlooked, neglected or forgivenintentionally, or in ignorance, then Pittman was entitled to the same treatment. To do otherwise is to be selective. To pick and choose, intentionally or in ignorance, is forbidden by the Public Bid Law. Failing to be evenhanded in the evaluation of bid deficiencies appears, to this Court, to be the essence of arbitrary, capricious and unfair conduct. Budd, supra.
This Court also believes that the actions of the Council was arbitrary, capricious and improper for other reasons. Some of the Council members testified that they voted to reject Pittman only because Pittman had failed to write out the price "in words" on bid Item No. 1 and voted primarily as a means to direct Mr. Kilshaw to perform his "duty" to return the bid to Pittman as they thought City-Parish ordinances and the Plan of Government required.
The Council subsequently passed Ordinance 8063 to compel Mr. Kilshaw to perform his "duty" to reject and return all bids he believed to be "irregular." This Court believes that rejecting the low bid on a public works project for technical, formal reasons to compel performance of the perceived duty of a public employee was an abuse of discretion and improper.[24]
Others of the Council members acted obstensibly under the mistaken belief that Pittman did not follow instructions for listing the Pre-Qualified System Vendors. The evidence reveals, however, that the Council was advised at the November 20, 1985 meeting that Pittman had complied.
Others of the Council members testified to misunderstandings of the facts and circumstances under consideration. For example, some council members believed that the City-Parish would save more than $45,000 by contracting with Boh.
The Council was advised that it could legally and properly award the contract for the Project to either Pittman or Boh at the November 20th meeting. Nevertheless, the Council chose to reject the low bid of Pittman and accept a higher bid. In doing so, the Council acted arbitrarily and capriciously and for reasons outside of the purpose, and intent of the Public Bid Law.
The Public Bid Law was enacted for the protection of taxpaying citizens and not for the benefit of public officials or the public entities they represent. The taxpaying public is entitled to quality performance of public works at the lowest price to be produced by open, fair and competitive bidding. The Public Bid Law requires that works be performed only by the "lowest responsible bidder who had bid according to the contract, plans and specifications as *191 advertised." Boxwell, supra; St. Landry, supra; and Smith, supra.
The Public Bid Law vests public entities with discretion to determine which bidder is the lowest responsible bidder who bid according to the contract, plans and specifications as advertised. The law does not permit the selection of one bid which is higher and the rejection of other bids which are lower, and the discretion vested within the public entity must be exercised in a fair and legal manner; not arbitrarily. Haughton, supra. While the jurisprudence reflects many cases in which the discretion afforded is described as "wide," the 1982 and 1983 amendments to LSA-R.S. 38:2214 restricted the discretion to reject any and all bids which had been historically reserved to public entities, and now requires the existence of "just cause" for the rejection of any or of all bids. See LSA-R.S. 38:2214 A(2) and Milton J. Womack v. The Legislative Budgetary Control Commission, 470 So.2d 460 (La.App. 1st Cir.1985). In Womack, the First Circuit decreed that a bidder is entitled to know the just cause by which his bid was rejected and mandated the public entity involved to furnish the "just cause" to the bidder. The Womack court also decreed that without "just cause" the public entity is arbitrary and capricious in rejecting the bidder's proposal.
"Just cause" is the determination to be made by the public entity when considering the rejection of any bid or all bids. If, as decreed by Womack, public entities must have "just cause" to reject any and all bids, then it can no longer be said that public entities have the discretion to reject all bids in the absence thereof. This Court believes that the jurisprudence wherein Louisiana courts have refused to compel award of a contract to the low bidder based on the public entity's right to reject any and all bids has been legislatively overruled or limited by the 1983 amendment to LSA-R.S. 38:2214. Thus, if the public entity does not have just cause to reject the low bidder nor just cause to reject all bids, awarding the contract to the lowest responsible bidder, by right of the statute which is not subject to waiver, becomes a ministerial duty subject to mandatory injunction and/or mandamus. T.L. James v. Jefferson Parish Council, 245 La. 818, 161 So.2d 597, 599, 600 (1963); Budd, supra; Williams v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 388 So.2d 438 (La.App. 2nd Cir., 1980); Tide Equipment, supra.
This Court believes that it is the taxpayers' view and interest which should be of paramount concern and should prevail. It is the taxpayers' interest that is served by requiring the contract to be made with the lowest responsible bidder who bid according to the contract, plans and specifications as advertised.
The Council does not have the right to select to which bidder to whom it will award public works contracts. The Council, as the awarding authority for the City-Parish, is obliged to determine, in good faith, which of the bidders is the lowest responsible bidder. A bid may be rejected only if it deviates from the contract, plans and specifications as advertised in a matter of substance sufficient to constitute "just cause." In default of the existence of just cause, the rejection of the low bid is reprobated by law. LSA-R.S. 2214A(2). When the variance in the bid does not affect the integrity of the contract; does not result in favoritism or prejudice to the bidders or to the taxpaying public; does not permit circumvention of the Public Bid Law or the rules of open and fair competition and does not discourage public bidding, it is insubstantial, does not constitute "just cause" and the public entity does not have the discretion or right to reject the bid because of that variance. LSA-R.S. 38:2214; Sullivan v. City of Baton Rouge, 345 So.2d 912 (La.App. 1st Cir., 1976); Lorenz v. Plaquemines Parish Commission Council, 365 So.2d 27 (La.App. 4th Cir., 1978); and Womack, supra.
The Resolution by which the action of the November 20, 1985 meeting of the *192 Council is recorded,[25] was prepared after the meeting in direct violation of Section 2.12 of the Plan of Government of the City-Parish. All ordinances and resolutions are required to be typed or printed and introduced before action is taken thereon.[26] The Council Administrator acknowledged that the Council does not comply with the Plan of Government in this respect and that compliance with Section 2.12 of the Plan of Government has not been had for many years. The Council should seek amendment to the Plan of Government. The Council should not continue to ignore the plain provisions of the Plan of Government. It should either comply with it or seek its change. The fact of non-compliance for many years does not provide this Court with justification to clothe non-compliance with validity; and the acknowledged violation of Section 2.12 of the Plan of Government requires the declaration of invalidity of Resolution 24,584 and it is accordingly so declared.
Finally, the Council's actions of November 20, 1985, were not preceded by a hearing on the rejection of the Pittman bid as specified under LSA-R.S. 38:2212 J; Haughton Elevator, supra; and Pittman Construction Co. v. City of Opelousas, 264 F.2d 695 (5th Cir., 1959). Although all the witnesses attested to Pittman's responsibility and capability as a contractor, and the members of the Council testified that they considered no issue of Pittman's responsibility, the evidence revealed that there were overtones and questions regarding Pittman's compliance with instructions in the performance of the work during the Council meeting. Some of the Council members testified that they harbored doubts concerning Pittman's failure to follow instructions in bidding and some wondered if the same would be characteristic of Pittman's performance of the work. Such suggestions were made by counsel for Boh at the Council meeting on November 20, 1985. Under these circumstances, a due process hearing was required. The November 20, 1985 Council meeting did not constitute such a hearing as is required by law. See Haughton Elevator, supra, and LSA-R.S. 38:2212 J.
Boh contends that the Court's jurisdiction is limited to a determination of the action of the Council as a legislative body involved in a legislative function. Boh reminds the Court to reject any inclination to substitute the Court's judgment for that of the Council and to confine the Court's review to the legislative action embodied within the Council's ordinance rejecting the Pittman bid and accepting the Boh bid. This Court will not substitute its judgment for that of the Council. The Council, however, was not in the performance of a legislative function in the award of the contract to Boh or rejection of the Pittman bid and the acceptance of the resolution recording action is not the performance of a legislative enactment. A public entity, acting as an awarding authority, is acting in pursuit of the public's interest as owner of the public works projectas a proprietorand its function as such is clearly not legislative. The jurisdiction of the Court, thereof, is at least coextensive with the provisions of the Public Bid Law. The Court's jurisdiction is at least as wide as the provisions and prohibitions contained in the Public Bid Law and as otherwise established by law.
For these reasons, the prayer of Pittman Construction Company, Inc. that its writ of mandamus be issued is hereby granted, and it is ordered that the City of Baton Rouge, the Parish of East Baton Rouge, the Metro-Council, the individual members thereof, and the Mayor-President accept the bid of the plaintiff and to execute and award a contract to the plaintiff for construction of the "Rehabilitation and Upgrade of the South Wastewater Treatment Plant" in accordance with the plaintiff's bid proposal and the contract plans, specifications and contract documents, as advertised.
*193 It is further ordered that the defendants, the Metro-Council of the City and Parish of East Baton Rouge, the City of Baton Rouge, the Parish of East Baton Rouge, the Metro-Council, the individual members thereof, the Mayor-President, Boh Brothers Construction Company and all persons, firms, corporations acting in concert therewith are hereby enjoined and prohibited to take any action to implement, execute or give affect to the terms and conditions of the contract between Boh Brothers Construction Company and the City of Baton Rouge and from the performance of any work, assigning or subletting of any part or portion of the work or the payment of any sums for work or materials performed, completed or supplied. The plaintiff is granted a mandatory injunction ordering the defendants, the Metro-Council of the City and Parish of East Baton Rouge, the City of Baton Rouge, the Parish of East Baton Rouge, the Metro-Council, the individual members thereof, and the Mayor-President to enter and execute a contract with plaintiff for the performance of the South Wastewater Treatment Plant in accordance with the bid proposal of the plaintiff, Pittman Construction Company, and the contracts, plans, and specifications, as advertised. This Court believes that Pittman Construction Company is entitled to award of the contract in accordance with its bid and the contract, plans, and specifications, as advertised.
The testimony revealed that Boh initiated the work under the contract and had performed some work as of the time of trial. The record does not disclose the cost or value of the work performed, its compliance with the contract, plans, and specifications as advertised; whether it has been performed in a skillful and workmanlike manner or if it is acceptable to the City-Parish and its engineer. Based on the record, I cannot make a determination as to these or other matters which may be pertinent to the relief to which the City-Parish and/or Boh may be entitled, nor was such relief pled or prayed for herein. It, therefore, may be necessary for Boh and the City-Parish to engage in a separate proceeding for determination of their respective rights and to the extent the same cannot be determined between them without such proceedings. Likewise, it may be necessary for the City-Parish and Pittman to engage in a separate proceeding for the determination of the work performed by Boh, its compliance with the contract, plans, and specifications, as advertised, the extent to which it is usable for its intended purposes and the acceptance thereof by the City-Parish and its engineer. Accordingly, to the extent Pittman and the City-Parish cannot agree as to an appropriate credit for the work performed, the parties are relegated to a separate proceeding for such determination, provided, however, that such shall not retard, delay or impede the execution of judgment herein or the signing of the contract between Pittman and the City-Parish and the performance of the balance of the work by Pittman.
Judgment will be signed accordingly.
NOTES
[1] Joint Exhibits 1-10 and Plaintiff's Exhibit 1
[2] Plaintiff's Exhibits 2, 2A, 2B, 3, 4, 5, 6 and 19
[3] Plaintiff's Exhibits 18 and 23
[4] Plaintiff's Exhibits 16 and 21
[5] Joint Exhibits 11-14 and Plaintiff's Exhibit 48
[6] Joint Exhibit 1, Plaintiff's Exhibits 2 and 2B, Page 00200-1
[7] City-Parish Ordinance 1:705(a)(4)
[8] See Plaintiff's Exhibits 2, 2A, 2B, 3 and 4
[9] Joint Exhibit 1
[10] Plaintiff's Exhibits 30-47
[11] See Plaintiff's Exhibits 30-31
[12] Section 00720, Page 00720 of Joint Exhibit 1
[13] Page 00200-2, Joint Exhibit 1
[14] Joint Exhibit 1, Pages XXXXX-X-X; 00710-1
[15] Plaintiff's Exhibit 9
[16] Joint Exhibits 11-14
[17] Page 00200-1 of Plaintiff's Exhibit 3
[18] Joint Exhibit 1
[19] Page 00200-4 of Plaintiff's Exhibit 3
[20] Page 00100-2, Joint Exhibit 1
[21] Form 00720-3
[22] Plaintiff's Exhibits 12, 12A-D; Joint Exhibit 11
[23] Joint Exhibits 11 and 14
[24] Determination of the legality of Ordinance 8063, to the extent it may conflict with LSA-R.S. 38:2211 et seq. and particularly with LSA-R.S. 38:2214 is not necessary for determining the issues herein.
[25] Resolution 24,584, Plaintiff's Exhibit 48
[26] Section 2.12 of the Plan of Government, Joint Exhibit 20