522 So.2d 169 (1988)
KING COLD STORAGE WAREHOUSE, INC.
v.
CITY OF NEW ORLEANS and Philmat, Inc.
No. CA-8137.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
Rehearing Denied April 13, 1988.
*170 C. Michael Winters, New Orleans, for plaintiff-appellant King Cold Storage Warehouse, Inc.
Okla Jones, II, City Atty., Robin M. Giarrusso, Asst. City Atty., New Orleans, for defendant-appellee City of New Orleans.
John R. Flowers, Jr., Denechaud and Denechaud, New Orleans, for defendant-appellee Philmat, Inc.
Before GULOTTA, C.J., and KLEES and LOBRANO, JJ.
KLEES, Judge.
The Louisiana Public Bid Law, LSA-R.S. 38:2211 et seq., requires that all public work done by a public entity shall be advertised and let by contract to the lowest responsible bidder. The issue before us is whether defendant, Philmat, Inc., was the lowest "responsible bidder", as defined by the statute, on a bid proposal let out by defendant, the City of New Orleans. We, finding no error in the trial court's judgment, conclude that it was.
The Archbishop of New Orleans, Phillip M. Hannan, was responsible for bringing the Commodity Supplemental Food Program (hereinafter called CSFP) to New Orleans in April, 1970. CSFP is a poverty food program in which the Archdiocese secures free food, donated by the United States Department of Agriculture, for the benefit of welfare mothers, elderly and nursing infants. This program contained two functions: the temporary warehousing and the distribution of the food commodities.
The City, as the designated local agent, annually put the contract for central warehousing of the food commodities out for public bid. At the time this suit was instituted, plaintiff, King Cold Storage, Inc., possessed this contract on a month to month basis. Philmat, a non-profit corporation and subsidiary of the Archdiocese of New Orleans, was the direct food distributor of the food commodities since 1972. In December, 1982, the U.S.D.A. introduced cheese into the CSFP. Since that time Philmat received the weekly loads of cheese, warehoused it between 30 to 40 degrees F in accordance with USDA climate control guidelines and distributed the cheese to program participants from it ten distribution centers in the area.
On December 31, 1986, the City received and opened bids for bid proposal No. FTC-2183 pursuant to Louisiana's Public Bid Law, for the warehousing and distribution of the food commodities under the CSFP. Philmat, the lowest bidder, bid $144,332.12. King, the second lowest bidder, bid $201, 452.96, a difference of $57,120.84.
The bid specifications provide in part ...
(1) The successful bidder must be able to go into operation by February 1, 1987 ...
(2) The successful bidder must provide a minimum of 15,000 square feet for storage of commodities and all storage must be under one roof.
(3) The successful bidder must provide warehouse storage that meets all guidelines for storing United States Department of Agriculture donated foods as provided by USDA ...
(4) The successful bidder must possess or have access to 2-5 ton trucks for food deliveries. These trucks must be of a model not older than 1980.
(5) Specific commodities listed herein must be maintained in a special warehouse storage area of controlled temperature and humidity conditions wherein the temperature will not exceed 70 degrees F., and the relative humidity will not exceed 60%. The commodities which are to be stored in special conditions are rice and infant formula. Cheese must be refrigerated at temperatures between 30 to 40 degrees F.
Philmat entered into several contingent agreements in order to reduce their risk of loss. Their warehouse agreement was conditioned upon approval of various City and State health inspectors who made an inspection on January 16, 1987. On January 20, 1987, City officials concluded that Philmat's facility and bid conformed to bid specifications and orally advised them to proceed toward implementation of the contract.
*171 On January 23, 1987, Philmat executed a lease for a 28,000 square foot warehouse at 1000 S. Broad St. On January 28, 1987, the City advised Philmat in writing that it accepted their bid and would prepare and forward a contract. The City then notified King that effective February 1, 1987, Philmat would warehouse the commodities. King sought and received a temporary restraining order preventing the execution of the contract. After trial, the trial court denied the preliminary injunction finding Philmat's bid substantially complied with bid specifications. From that ruling, plaintiff appealed.
As a political subdivision of the state, the City must adhere to Louisiana's Public Bid Law. Section 2212 (A) (1)(a) of the statute provides in part:
All public work exceeding the contract limit as defined here ... to be done by a public entity shall be advertised and let out by contract to the lowest responsible bidder who bids according to the contract, plans, and specifications as advertised. Emphasis added.
Plaintiff, King argues that Philmat was not the lowest responsible bidder because its bid failed to conform with the specifications as set forth in the bid proposal. Specifically, King contends that Philmat's warehouse experience was insufficient, their vehicles and machinery were deficient, their warehouse facility was inadequate due to poor refrigeration and lacked adequate space to accomodate the food deliveries by large tractor trailers.
The law is well-settled that it is only where there is "a substantial variance between bid specifications and a bid," that the bid must be rejected. Tide Equipment Company v. Pointe Coupee Parish Police Jury, 312 So.2d 154 (La.App. 1st. Cir.1975), writ denied 315 So.2d 38 (La.1975); Toye Bros. Yellow Cab Co. v. City of New Orleans, 264 So.2d 768 (La.App. 4th Cir.1972), writ refused 263 La. 102, 267 So.2d 210. In the instant matter, there was much conflicting testimony as to whether or not Philmat's bid met bid specifications. The trial court could not determine whether there was a substantial variance simply by looking at the bid proposal and therefore ordered an on site inspection of Philmat's facilities. In accordance with bid specifications, Philmat leased a 28,000 square foot warehouse at 1000 S. Broad St. After written notification that the City accepted its bid, Philmat contracted with Thermo-King Sales to rent a portable 40 foot insulated container to temporarily refrigerate and cool the cheese to meet bid specifications. Thermo-King Sales had agreed to deliver and install the temporary cooler on 24 hour notice. This was merely a temporary arrangement until Philmat could dismantle its permanent cooler located at one of its distribution centers and reassemble it at the newly leased warehouse on S. Broad St. The trial judge concluded that Philmat had met the specifications requiring storage of the commodities to be under one roof and refrigeration of cheese between 30 and 40 degrees F. The record is devoid of evidence to indicate otherwise and his judgment should not be disturbed.
Plaintiff further argues that Philmat failed to meet bid specifications because the storage facility at the S. Broad St. location was not adequate to store the infant formula and rice as of February 1, 1987. The bid specifications required that these certain commodities be maintained in a special storage area of the warehouse in which the temperature was not to exceed 70 degrees F and the relative humidity not to exceed 60 percent. Plaintiff is correct in that the special storage area of the warehouse did not conform to the requirements as of February 1, 1987. As of that date Philmat was in the process of enclosing the climate control area and installing the humidifying equipment. The trial court's on site inspection on February 11, 1987, however, disclosed that the special climate control areas were in excellent condition and complied with bid specifications. Since the City notified Philmat of the contract award on January 27, 1987, the trial court was correct in concluding that the eleven day violation was justifiable and pardonably brief.
Plaintiff also argues that Philmat did not comply with bid specifications because it *172 did not have two 5 ton trucks for deliveries. The record indicates that on February 1, 1987, Philmat owned one 20 foot enclosed 1987 Mercedes Benz truck. Philmat also made arrangements with Ryder Truck Rental Service for the lease of the second truck. Plaintiff offered no evidence to refute that Philmat had access to two 5 ton trucks as required by the bid specifications. This argument lacks merit.
LSA-R.S. 38:2216(C)(2)(a) provides:
For purposes of this Subsection, "responsible bidder" shall mean a contractor or subcontractor who has an established business and who has demonstrated the capability to provide goods and services in accordance with the terms of the contract, plan, and specifications witout excessive delays, extensions ...
Philmat has accumulated warehouse experience in the distribution of CSFP commodities since 1970. Clearly, their knowledge and experience of 17 years qualify them as a responsible contractor pursuant to this subsection of the statute. The record indicates that Philmat's bid did not substantially vary from the bid specification.
Lastly, plaintiff argues that the district court erred in not finding that the City acted arbitrarily or capriciously in awarding the contract to Philmat. In determining what is the low bid where more than one bidder is involved the law requires the awarding of the bid to the lowest "responsible bidder". The public body with the authority to make this determination is given wide discretion and will not be interfered with by the court unless arbitrary or capricious. Bilongo v. Dept. of Health and Human Resources, 428 So.2d 1021 (La.App. 1st Cir.1983); Tide Equipment Co. v. Pointe Coupee Parish Police Jury, supra. After reviewing the record, we conclude as did the trial court, that Philmat submitted a valid low bid for the CSFP contract resulting in taxpayer savings of $57,120.84, and that its bid substantially complied with bid specifications. The City's bidding practice was conducted in a reasonable and fair manner.
Accordingly, the judgment appealed is affirmed.
AFFIRMED.